# LAPINA *v.* WILLIAMS, COMMISSIONER OF IMMIGRATION.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 7.  Submitted December 1, 1913.—Decided January 5, 1914.

The authority of Congress over the admission of aliens to the United States is plenary.

Congress may exclude aliens altogether, or it may prescribe the terms and conditions upon which they may come into or remain in this country.

The provisions of the Immigration Act of 1907 respecting admission and deportation apply to an alien who, having remained in this country for more than three years after first entry, and having gone abroad for a temporary purpose with the intention of returning, again seeks and gains admittance to the United States.

The immigration acts of 1903 and 1907 were revisions or compilations with some modifications of previous acts pertaining to the same subject, and those acts having confined the exclusion and deportation provisions to "alien immigrants" and that term having been construed as not including aliens once admitted and returning after temporary absence, the omission of the word "immigrant" and application of those provisions to "aliens" will be construed as indicating an intention to extend the act to all aliens, whether entering for the first time or returning after a temporary absence.

Debates in Congress are unreliable as a source from which to discover the meaning of the language employed in an act, and this court is not disposed to go beyond the reports of the committees.

It is only in a doubtful case that the title of an act can control the meaning of the enacting clauses, and so *held,* that the use of the word "immigration" in the title of the act of 1907 cannot overcome the fact as evidenced by the act itself that Congress intended its provisions to apply to all aliens and not exclusively to alien immigrants. *Taylor* v. *United States,* 207 U. S. 120, distinguished.

179 Fed. Rep. 839, affirmed.

THE facts, which involve the deportation provisions of the Alien Immigration Act of 1907, are stated in the opinion.

*Mr. William Hawkins* for petitioner:

The majority of the Circuit Courts of Appeals are in petitioner's favor,—four as against two. For those against petitioner's contention, see *Ex parte Hoffman,* 179 Fed. Rep. 839; *Taylor* v. *United States,* 152 Fed. Rep. 1; reversed, 207 U. S. 120; *United States* v. *Sprung,* 187 Fed. Rep. 905. In favor of petitioner's contention, see *Rodgers* v. *United States,* 152 Fed. Rep. 346; and see also 191 Fed. Rep. 979; *Redfern* v. *Halpert,* 186 Fed. Rep. 151; *United States* v. *Aultman,* 148 Fed. Rep. 1022; *United States* v. *Nakashima,* 160 Fed. Rep. 842. And see also District Court cases, *Re Petterson,* 166 Fed. Rep. 536; *Re White,* 166 Fed. Rep. 1007; *Re Kleibs,* 128 Fed. Rep. 656; *Re Funaro,* 164 Fed. Rep. 152; *Re Crawford,* 165 Fed. Rep. 830.

The petitioner, in the eye of the law, was a domiciled alien resident, and therefore not within the scope of the Immigration Act of 1907.

She did not put herself in motion to quit the country, *sine animo revertendi.* *The Venus,* 8 Cranch, 280.

Domicile is largely a matter of intention. See Mc-Crary on Elections, Appx., 2d ed., 449, 561.

A man may acquire a domicile or residence if he be personally present in a place and elect that as his home. *Behrensmeyer* v. *Kreitz,* 135 Illinois, 591; *Cobb* v. *Smith,* 88 Illinois, 201; *Wilson* v. *Marshall,* 80 Illinois, 78.

In the Western States where petitioner lived there is no distinction between resident aliens and citizens except as to voting and holding public office. *State* v. *Fowler,* 41 La. Ann. 380.

The words "aliens" and "alien" as used in the immigration statutes existing prior to 1903 and 1907, were both construed uniformly by the Federal courts as referring to "alien immigrants" exclusively. *Moffitt* v. *United States,* 128 Fed. Rep. 375; *United States* v. *Burke,* 99 Fed. Rep. 895.

Under the 1891 act a person in circumstances similar to the one at bar did not come within the scope of the immigration statutes. *Re Panzara,* 51 Fed. Rep. 275; *Re Martorelli,* 63 Fed. Rep. 437; *Re Maiola,* 67 Fed. Rep. 114.

The use of the word "aliens" in acts of 1903 and 1907, instead of "alien immigrants," does not indicate any intention on the part of Congress to make the statutes of 1903 and 1907 apply to an alien statused as in the case at bar. *United States* v. *Dauphin,* 20 Fed. Rep. 628; *Goodell* v. *Jackson,* 20 Johns. 722; *Taylor* v. *Delancey,* 2 Caine's Cases, 151; *Dominick* v. *Michael,* 4 Sandf. 409.

Where the language of a statute is ambiguous or otherwise doubtful; or, being plain, a literal construction would lead to such absurdity, hardship or injustice, as to render it irrational to impute to the law-making power a purpose to produce or permit such result, the title may be resorted to as tending to throw light upon the legislative intent of its scope or operation. *United States* v. *Fisher,* 2 Cranch, 386; *Holy Trinity Church* v. *United States,* 143 U. S. 462; *Coosaw Mining Co.* v. *South Carolina,* 144 U. S. 563; *Binns* v. *United States,* 194 U. S. 486.

For Congressional history of the alien immigration acts, see 57th Cong. H. R. 12199; Cong. Rec., 1st Sess., 57th Cong. Vol. 35, Pt. 6, pp. 5757, 5764, 5767; 9 Sen. Rep. No. 2119, 57th Cong., 1st Sess., Cong. Rec. Vol. 36, Pt. 1, pp. 97, 105, 129; Vol. 36, Id., p. 2805; Cong. Rec. Vol. 36, p. 134, 57th Cong., 2nd Sess., Sen. Doc. 62, 57th Cong., 1st Sess., Vol. 6, Sen. Doc., Serial No. 4421, pp. 100–102, 195, 402, 405, 410, 450, 466.

The Government's present contention is negatived by the statistical rules issued by the government department. See government print dated 1908,—approved by Secretary Straus, June 22, 1907, Rule 30.

The Government's present contention was not recognized by the Secretary of Commerce and Labor at the

time the 1907 act was enacted,—and long afterwards. The Department's own written response to Congress proves this. See 60th Cong., 2d Sess., H. R. Doc. No. 1494, Letter of Feb. 25, 1909, from the Secretary of Commerce and Labor transmitting a response to the inquiry of the House as to admission of aliens into the United States. See *United States* v. *Ala. R. R. Co.*, 142 U. S. 621.

The words "alien" and "aliens" and "passengers" had been used in four previous immigration statutes as meaning "immigrant." *Re Lea*, 126 Fed. Rep. 233.

If a domiciled alien who has taken out his first papers goes abroad and is subjected to pains by a government other than that of his origin, the United States Ambassadors have been held justified, on proper showing, to interfere on behalf of such inchoate citizen. See Foreign Relations of U. S., 1884, p. 552.

Penal statutes are to be strictly construed. The rule is founded on the tenderness of the law for the rights of the individual. *United States* v. *Wiltberger*, 5 Wheat. 95; *Hackfeld* v. *United States*, 197 U. S. 442; *Canfara* v. *Williams*, 186 Fed. Rep. 354.

*Mr. Assistant Attorney General Denison* and *Mr. Francis H. McAdoo* for respondent:

For an earlier case on this question see *Bugajewitz* v. *Adams*, 228 U. S. 585.

The word "alien" as used in the later immigration statutes does not mean "alien immigrant," but is intended to cover any "alien" entering the country, whether or not previously here.

Neither in the section itself nor elsewhere does the act place any restriction on the word "alien."

The elimination by Congress of the word "immigrant" throughout the act was a positive indication of an intention to withdraw the restriction on the word "alien"

which its presence in the prior acts had been held by the courts to imply.

The administrative construction supports the construction given by the court below.

The policy of the act is against the restoration, by construction, of the restricting words. *Aultman* v. *United States*, 148 Fed. Rep. 1022; *Barlin* v. *Rodgers*, 191 Fed. Rep. 970; *Ex parte Crawford*, 165 Fed. Rep. 830; *Frick* v. *Lewis*, 195 Fed. Rep. 693; *Funaro* v. *Watchorn*, 164 Fed. Rep. 152; *Ex parte Hoffman*, 179 Fed. Rep. 839; *In re Kleibs*, 128 Fed. Rep. 656; *Lem Moon Sing* v. *United States*, 158 U. S. 538; *Low Wah Suey* v. *Backus*, 225 U. S. 460; *In re Maiola*, 67 Fed. Rep. 114; *In re Martorelli*, 63 Fed. Rep. 437; *Moffitt* v. *United States*, 128 Fed. Rep. 375; 23 Opinions Attorney General, p. 278; *In re Ota*, 96 Fed. Rep. 487; *In Panzara*, 51 Fed. Rep. 275; *Ex parte Petterson*, 166 Fed. Rep. 536; *Prentiss* v. *Stathakos*, 192 Fed. Rep. 469; *Redfern* v. *Halpert*, 186 Fed. Rep. 150; *Rodgers* v. *Buchsbaum*, 152 Fed. Rep. 346; *Sibray* v. *United States*, 185 Fed. Rep. 401; *Sinischalchi* v. *Thomas*, 195 Fed. Rep. 701; *Taylor* v. *United States*, 207 U. S. 120; *Taylor* v. *United States*, 152 Fed. Rep. 1; *United States* v. *Aultman*, 143 Fed. Rep. 922; *United States* v. *Nakashima*, 160 Fed. Rep. 842; *United States* v. *Sprung*, 187 Fed. Rep. 903; *United States* v. *Villet*, 173 Fed. Rep. 500; *White* v. *Hook*, 166 Fed. Rep. 1007.

If a restriction on the word "alien" is to be implied, it should cover persons bona fide domiciled and not this petitioner. *Barlin* v. *Rodgers,* 191 Fed. Rep. 971; *Ex parte Petterson*, 166 Fed. Rep. 536.

MR. JUSTICE PITNEY delivered the opinion of the court.

The petitioner, an unmarried woman and a native of Russia, came to the United States in the year 1897 or 1898, at the age of about twelve years, accompanied by

a man who had promised to marry her, and during the four years immediately following she practiced prostitution in the City of New York and supported her companion with the proceeds of her prostitution; she then left that city, and thereafter continuously practiced prostitution in various parts of the United States, including different towns and cities in the States of Washington, Arizona, and Texas. In the month of March, 1908, she returned to Russia for the purpose of visiting her mother, intending at the same time to return to this country; she reëntered the United States at the port of New York in June, 1908, accompanied by her mother, at which time petitioner falsely represented, for the purpose of facilitating her landing, that she was Mrs. Joseph Fiore, and the wife of an American citizen; at the time of this, her second entry, she intended to continue the practice of prostitution in the United States, and almost immediately upon being admitted she engaged in that practice, and was continually engaged in it until September 21, 1909, on which date she was arrested in a house of prostitution in Phoenix, Arizona, upon a warrant of arrest duly issued by the Acting Secretary of Commerce and Labor under the provisions of the Immigration Act of February 20, 1907, c. 1134, 34 Stat. 898. Upon a hearing properly accorded to her, the foregoing facts were established, and an order of deportation was made upon the ground that she was a prostitute and was such at the time of her entry into the United States; that she entered the United States for the purpose of prostitution; and that she had been found an inmate of a house of prostitution and practicing the same within three years after her entry. She obtained a writ of *habeas corpus*, which, after a hearing, was dismissed by the District Court for the Southern District of New York. Upon appeal, the Circuit Court of Appeals affirmed the order of dismissal (*sub nom. Ex parte Hoffman*, 179 Fed. Rep. 839). The present writ of cer-

tiorari was then allowed because of the division of judicial opinion upon the question presented, which is whether the provisions of the Immigration Act of 1907 respecting admission and deportation apply to an alien such as the petitioner, who, having remained in this country for more than three years (in this instance for more than ten years), after first entry, and having gone abroad for a temporary purpose and with the intention of returning, again seeks and gains admittance into the United States.

The pertinent provisions of the act of 1907 are set forth in the margin.[1] So far as the present question is concerned, the act is not materially different from—certainly not less stringent than—the act of March 3, 1903 (32 Stat. 1213, c. 1012). The Circuit Court of Appeals in the present case followed its own decision in *Taylor* v. *United States*, 152 Fed. Rep. 1, which was based upon the act of

---

[1] SEC. 2. That the following classes of aliens shall be excluded from admission into the United States: . . . prostitutes, or. women or girls coming into the United States for the purpose of prostitution or for any other immoral purpose; . . . 34 Stat. 898.

SEC. 3. . . . any alien woman or girl who shall be found an inmate of a house of prostitution or practicing prostitution, at any time within three years after she shall have entered the United States, shall be deemed tó be unlawfully within the United States and shall be deported as provided by sections twenty and twenty-one of this Act. 34 Stat. 899.

SEC. 20. That any alien who shall enter the United States in violation of law, . . . shall, upon the warrant of the Secretary of Commerce and Labor, be taken into custody and deported to the country whence he came at any time within three years after the date of his entry into the United States. 34 Stat. 904.

SEC. 21. That in case the Secretary of Commerce and Labor shall be satisfied that an alien has been found in the United States in violation of this Act, or that an alien is subject to deportation under the provisions of this Act or of any law of the United States, he shall cause such alien within the period of three years after landing or entry therein to be taken into custody and returned to the country whence he came, as provided by section twenty of this Act, . . . 34 Stat. 905.

1903, and in which it was held that while the provisions of the act of March 3, 1891 (26 Stat. 1084, c. 551) had been construed as restricted to "alien immigrants," the act of 1903 had been so framed as to cover aliens whether immigrants or not. In behalf of the petitioner it is contended that the court erred in its judgment as to the purpose of Congress in modifying the language of previous acts on adopting the revision of 1903, and that this act and the act of 1907, as well as those that preceded them, when properly construed, refer to "alien immigrants" exclusively.

The acts of 1903 and 1907 being revisions or compilations (with some modifications) of previous acts pertaining to the same general subject-matter, a reference list, in chronological order, is for convenience set forth in the margin.[1]

---

[1] IMMIGRATION ACTS.

Rev. Stat. title "Immigration," §§ 2158–2164.

"An act supplementary to the acts in relation to immigration," approved March 3, 1875, 18 Stat. 477, c. 141.

"An act to regulate Immigration," approved August 3, 1882, 22 Stat. 214, c. 376.

"An act to prohibit the importation and migration of foreigners and aliens under contract or agreement to perform labor in the United States, its Territories, and the District of Columbia," approved February 26, 1885, 23 Stat. 332, c. 164.

"An act to amend an act to prohibit the importation and immigration of foreigners and aliens under contract or agreement to perform labor in the United States, its Territories, and the District of Columbia," approved February 23, 1887, 24 Stat. 414, c. 220.

"An act making appropriations to supply deficiencies," etc., approved October 19, 1888, containing clauses amending acts of February 26, 1885, and of February 23, 1887, 25 Stat. 565, 566, 567, c. 1210.

"An act in amendment to the various acts relative to immigration and the importation of aliens under contract or agreement to perform labor," approved March 3, 1891, 26 Stat. 1084, c. 551.

"An act to facilitate the enforcement of the immigration and contract-labor laws of the United States," approved March 3, 1893, 27 Stat. 569, c. 206.

In a number of cases in the Federal District and Circuit Courts, it was held that the provisions of the act of March 3, 1891, and the acts that preceded it, relating to the exclusion and deportation of persons arriving in the United States from foreign countries, were confined in their operation to "alien immigrants"; and that this term did not include aliens previously resident in this country, who had temporarily departed with the intention of returning. *In re Panzara* (1892), 51 Fed. Rep. 275; *In re Martorelli* (1894), 63 Fed. Rep. 437; *In re Maiola* (1895), 67 Fed. Rep. 114; *In re Ota* (1899), 96 Fed. Rep. 487. The same view was expressed by the Circuit Court of Appeals for the Ninth Circuit in *Moffitt* v. *United States* (1904), 128 Fed. Rep. 375.

Upon the reasoning and authority of these cases, a similar construction was given to the act of 1903 in *United States* v. *Aultman Co.* (1906), 143 Fed. Rep. 922 (affirmed by the Circuit Court of Appeals, 148 Fed. Rep. 1022), the attention of the court apparently not having been directed to the question whether any significant change had been made in the law by the revision of 1903.

But in *Taylor* v. *United States* (1907), 152 Fed. Rep. 1, which was a review by the Circuit Court of Appeals for the Second Circuit of a judgment of conviction upon an indictment for a misdemeanor for permitting an alien sailor to land in New York, contrary to § 18 of the act of

"An act making appropriations for sundry civil expenses," etc., approved August 18, 1894, containing clauses amending immigration laws, 28 Stat. 372, 390, 391, c. 301.

"An act to regulate the immigration of aliens into the United States," approved March 3, 1903, 32 Stat. 1213, c. 1012.

"An act to regulate the immigration of aliens into the United States," approved February 20, 1907, 34 Stat. 898, c. 1134.

"An act to amend an act entitled 'An act to regulate the immigration of aliens into the United States,' approved February twentieth, nineteen hundred and seven," approved March 26, 1910, 36 Stat. 263, c. 128.

1903, which made it the duty of the owners, officers, and agents of any vessel bringing an alien to the United States to adopt due precautions to prevent the landing of any such alien, etc., the court reviewed the changes made by Congress in the revision of 1903, "following decisions of the courts which tended to relax the provisions of earlier acts," and, finding that § 18 of the act of 1903 substantially reënacted a part of § 8 of the act of 1891, employing the term "alien" in the place of the term "alien immigrant," and that similar changes were made in other parts of the act, came to the conclusion that the change evinced an intent of Congress to use the word "alien" in its ordinary and unqualified meaning. This decision was reviewed in this court, and the judgment was reversed, but upon the ground (207 U. S. 120, 124) that § 18 did not apply to the ordinary case of a sailor deserting while on shore leave.

Shortly after the decision of the Circuit Court of Appeals in the *Taylor Case,* the Circuit Court of Appeals for the Third Circuit, in *Rodgers* v. *United States, ex rel. Buchsbaum* (1907), 152 Fed. Rep. 346, held that the provision of § 2 of the act of 1903, enumerating the classes of aliens to be excluded from admission into the United States, and amongst them "persons afflicted with a loathsome or with a dangerous contagious disease," and the provision of § 19, for the deportation of "aliens brought into this country in violation of law," could not be construed so as to extend to aliens domiciled in this country; affirming *In re Buchsbaum,* 141 Fed. Rep. 221. In *United States* v. *Nakashima* (1908), 160 Fed. Rep. 842, the Circuit Court of Appeals for the Ninth Circuit adopted the same view of the act of 1903 expressed in the *Aultman* and *Buchsbaum* cases, rejecting that adopted by the Court of Appeals in *Taylor* v. *United States.*

On the other hand, the latter decision has been followed in a number of cases arising under the act of 1907, which in this respect does not materially differ from the act of

1903. *Ex parte Petterson* (1908), 166 Fed. Rep. 536; *United States* v. *Hook* (1908), 166 Fed. Rep. 1007; *United States* v. *Villet* (1909), 173 Fed. Rep. 500; *Ex parte Hoffman* (1910), 179 Fed. Rep. 839 (being the case now under review); *Sibray* v. *United States* (1911), 185 Fed. Rep. 401; *United States* v. *Williams* (1911), 186 Fed. Rep. 354; *United States* v. *Sprung* (1910), 187 Fed. Rep. 903; *Frick* v. *Lewis* (1912), 195 Fed. Rep. 693; *Siniscalchi* v. *Thomas* (1912), 195 Fed. Rep. 701. *Contra, Redfern* v. *Halpert* (1911), 186 Fed. Rep. 150; and see *United States* v. *Rodgers* (1911), 191 Fed. Rep. 970.

The authority of Congress over the general subject-matter is plenary; it may exclude aliens altogether, or prescribe the terms and conditions upon which they may come into or remain in this country. *Chinese Exclusion Case,* 130 U. S. 581, 603; *Nishimura Ekiu* v. *United States,* 142 U. S. 651, 659; *Fong Yue Ting* v. *United States,* 149 U. S. 698, 713: *Lem Moon Sing* v. *United States,* 158 U. S. 538, 547.

The question, therefore, is not the power of Congress, but its intent and purpose as expressed in legislation. The cases that have held the immigration acts not to apply to domiciled aliens returning after a temporary absence have been rested in part upon the use of the term "immigration" in the titles of the respective acts, and in part upon the employment of that or similar terms in the enacting clauses.

As authority for a liberal interpretation of the acts, two decisions of this court have at times been referred to, which have, however, little, if any, present pertinency. *Holy Trinity Church* v. *United States,* 143 U. S. 457, held that the Contract-labor Law of February 26, 1885 (23 Stat. 332, c. 164), did not forbid a contract for employing a clergyman. The act was construed according to its spirit rather than its letter, and in view of its title, the evil intended to be remedied, the circumstances surround-

ing the appeal to Congress for legislation, and the reports of committees in each House, it was held to be the legislative purpose simply to stay the influx of cheap unskilled labor. Since this decision, an express exception has been made of "ministers of any religious denomination." In *Lau Ow Bew* v. *United States*, 144 U. S. 47, this court held that the provision of the Chinese Restriction Act of May 6, 1882 (22 Stat. 58, c. 126, § 6) as amended by act of July 5, 1884 (23 Stat. 115, c. 220), requiring every Chinese merchant coming into this country to procure and produce a certificate from the Chinese Government, did not apply to Chinese merchants already domiciled in the United States, who, having left this country for some temporary purpose, sought to reënter it upon their return to their homes here. But this decision was based in part upon the language of the particular statute and in part upon the fact that our treaty with China gave to Chinese merchants domiciled in the United States the right of egress and ingress, and the other rights, privileges, and immunities enjoyed in this country by the citizens or subjects of the most favored nation.

The legislative history of the act of 1903 demonstrates that the elimination of the word "immigrant" and other equivalent qualifying phrases was done deliberately. The bill originated in the House of Representatives, where the Committee Report declared that its general purpose was "to bring together in one act scattered legislation heretofore enacted in regard to the immigration of aliens into the United States . . . to amend such portions thereof as have been found, either as the result of experience in administering the law *or of judicial decision*, to be inadequate to accomplish the purpose plainly intended thereby; and to add thereto such further provisions as seemed to be demanded by the consensus of enlightened public opinion." H. Rept. 982, 57th Cong., 1st Sess. The report of the Senate Committee likewise explained

the bill as being in the main a reënactment of existing laws on the subject of immigration, stating—"The necessity for such reënactment is due in part to the fact that, *as a result of judicial decisions,* as well as of administrative experience, the efficiency of such laws to accomplish the evident purpose of their enactment has been shown to be materially less than appeared to be the case at the time of such enactment, and therefore a new expression of the legislative will upon the subject of immigration has become desirable." The Senate inserted the word "immigrant" in one place, but it was eliminated in conference. S: Rept. 2119, 57th Cong., 1st Sess.; S. Doc. 62, 57th Cong., 2d Sess. Cong. Record, Vol. 36, p. 2949, 57th Cong., 2d Sess.

Counsel for petitioner cites the debates in Congress as indicating that the act was not understood to refer to any others than immigrants. But the unreliability of such debates as a source from which to discover the meaning of the language employed in an act of Congress has been frequently pointed out (*United States* v. *Trans-Missouri Freight Ass'n,* 166 U. S. 290, 318, and cases cited), and we are not disposed to go beyond the reports of the committees. *Holy Trinity Church* v. *United States,* 143 U. S. 457, 463; *Binns* v. *United States,* 194 U. S. 486, 495; *Johnson* v. *Southern Pacific Co.,* 196 U. S. 1, 19.

It is earnestly insisted that the omission of the word "immigrant" is of little consequence, because it does not apply at all to the excluding section. It is said that the words "alien immigrant" did not occur in the acts of 1875, 1882, 1885, or 1887, and did not occur in the excluding section of the act of 1891, but only in its eighth section —that which related to manifesting. But in the act of 1893, "To facilitate the enforcement," etc., each section was made to apply to "alien immigrants." The force of the argument pretty well disappears when we recall that it was in spite of the absence of the word "immigrant" in the

excluding clause that courts had held that because the word occurred in the title and in other provisions of the pertinent acts, the excluding clauses likewise were confined to immigrants, in the sense of aliens who had no domicile in this country. Of course, there were other considerations; the extreme hardship in individual cases where the aliens had long been resident in this country, and the practically uncontrolled authority of the executive officers of the Government, being among them. But, whatever considerations may have combined to bring about the judicial interpretation of the acts that preceded the Revision of 1903, the committee reports already cited sufficiently show that the language of the new act was chosen not for the purpose of adopting, but in order to avoid, that interpretation.

Upon a review of the whole matter, we are satisfied that Congress, in the act of 1903, sufficiently expressed, and in the act of 1907 reiterated, the purpose of applying its prohibition against the admission of aliens, and its mandate for their deportation, to all aliens whose history, condition or characteristics brought them within the descriptive clauses, irrespective of any qualification arising out of a previous residence or domicile in this country.

The excluding section as found in the act of 1907 contains in its own language the clearest answer to the entire argument for the petitioner. It reads as follows (34 Stat. 898, c. 1134, § 2): "That the following classes of aliens shall be excluded from admission into the United States: All idiots, imbeciles, feeble-minded persons, epileptics, insane persons, and persons who have been insane within five years previous; persons who have had two or more attacks of insanity at any time previously; paupers; persons likely to become a public charge; professional beggars; persons afflicted with tuberculosis or with a loathsome or dangerous contagious disease; persons not comprehended within any of the foregoing excluded classes who are found to be

and are certified by the examining surgeon as being mentally or physically defective, such mental or physical defect being of a nature which may affect the ability of such alien to earn a living; persons who have been convicted of or admit having committed a felony or other crime or misdemeanor involving moral turpitude; polygamists, or persons who admit their belief in the practice of polygamy, anarchists, or persons who believe in or advocate the overthrow by force or violence of the Government of the United States, or of all government, or of all forms of law, or the assassination of public officials; prostitutes, or women or girls coming into the United States for the purpose of prostitution or for any other immoral purpose; persons who procure or attempt to bring in prostitutes or women or girls for the purpose of prostitution or for any other immoral purpose; persons hereinafter called contract laborers, who have been induced or solicited to migrate to this country by offers or promises of employment or in consequence of agreements, oral, written or printed, express or implied, to perform labor in this country of any kind, skilled or unskilled;" etc., etc. None of these excluded classes (with the possible exception of contract laborers, whose exclusion depends upon somewhat different considerations) would be any less undesirable if previously domiciled in the United States. And besides, the section contains its own specific provisos and limitations, and these, on familiar principles, strongly tend to negative any other and implied exception.

There remains, therefore, only the use of the word "immigration" in the title of the act to furnish support for petitioner's contention. But it is only in a doubtful case that the title of an act can control the meaning of the enacting clauses, and there is no such doubt here. *United States* v. *Fisher,* 2 Cranch, 358, 386; *Holy Trinity Church* v. *United States,* 143 U. S. 457, 462; *Coosaw Mining Co.* v. *South Carolina,* 144 U. S. 550, 563; *Patterson* v.

*Bark Eudora,* 190 U. S. 169, 173; *Cornell* v. *Coyne,* 192 U. S. 418, 430.

It was not intended, in the opinion of this court in *Taylor* v. *United States,* 207 U. S. 120, 126, to intimate an opinion with respect to the construction of § 18 of the act of 1903 that is inconsistent with the result now reached. There the Circuit Court of Appeals (one judge dissenting) had construed that section as excluding even the ordinary sailor, if an alien; basing this construction upon the changes wrought by Congress in the revision of 1903. This court, speaking by Mr. Justice Holmes, said: "A reason for the construction adopted below was found in the omission of the word 'immigrant' which had followed 'alien' in the earlier acts. No doubt that may have been intended to widen the reach of the statute, but we see no reason to suppose that the omission meant to do more than to avoid the suggestion that no one was within the act who did not come here with intent to remain. It is not necessary to regard the change as a mere abbreviation, although the title of the statute is 'An act to regulate the immigration of aliens into the United States.'" Of course, this language was employed with reference to the facts of that case, and was not intended to negative a purpose on the part of Congress to bring within the reach of the statute aliens who had previously resided in this country. In that case there was no element of previous residence.

*Judgment affirmed.*