**GUIMOND v. HOWES, District Director of Immigration (two cases).**

(District Court, D. Maine, S. D. December 30, 1925.)

Nos. 16, 17.

1. Aliens ⊝54—Period of limitation within which alien may be deported runs from time of re-entry after temporary absence.

Under provisions of Immigration Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), where alien has remained in country after first entry for greater period than that within which he is subject to deportation, and then makes a temporary visit abroad, the period of limitation for deportation runs from time of re-entry.

2. Aliens ⊝54—Evidence held to show aliens to be likely to become public charge, therefore subject to deportation.

Evidence *held* to show that aliens were likely to become public charges, and therefore subject to deportation under Immigration Act Feb. 5, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b).

3. Aliens ⊝53—Declaration of intention to become citizen does not affect power of Congress to deport aliens.

That alien has declared intention to become a citizen does not affect power of Congress to order deportation.

4. Aliens ⊝53—One having United States domicile for seven years prior to temporary absence deportable, where no application made to Secretary of Labor.

Immigration Act Feb. 5, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), providing that aliens returning after temporary absence to unrelinquished United States domicile of seven consecutive years may be admitted in discretion of Secretary of Labor, does not prevent deportation, where no application was made to Secretary on return from temporary absence.

5. Aliens ⊝53—Aliens not immigrant aliens subject to deportation.

Deportation provisions of Immigration Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St.

Ann. Supp. 1919, § 4289¼jj), apply to all "aliens," and not merely to "immigrant aliens," as did former laws.

Habeas Corpus. Applications by Fred Guimond and by Florida Guimond against Samuel H. Howes, District Director of Immigration, for writs to secure release from custody. Writs dismissed and petitioners remanded to custody and control of respondent.

George A. Hutchins, of Rumford, Me., for petitioners.

Frederick R. Dyer, Dist. Atty., and William B. Nulty, Asst. Dist. Atty., both of Portland, Me., for respondent.

HALE, District Judge. The petitions for habeas corpus allege that, by a decree of the Department of Labor, the petitioners have been ordered to be deported from the United States to Canada. The Department of Labor claims that the evidence in the hearing held before Carr G. Horne, Immigrant Inspector, at Rumford, Me., discloses the petitioners to have entered the United States unlawfully and without inspection, and that each is likely to become a public charge; that the petitioners are at Rumford, Me., under the restraint of Samuel H. Howes, district director of immigration at the port of Portland, by virtue of an order of the Department of Labor requiring the said Howes to deport the petitioners; that the petitioners gained a lawful entrance into the United States from Canada; that there is no evidence that they will ever become a public charge; and that the order of deportation is null and void, because it violates the provisions of treaties heretofore made between the United States of America and Canada.

In each of the above cases writ of habeas corpus issued, dated November 17, 1925; the return upon said writ was made by District Director Howes on December 8, 1925. The return shows that the petitioners were arrested by Samuel H. Howes, district director of immigration, on a warrant of arrest, and that on September 29, 1925, warrant for the deportation of the petitioners was issued by the Second Assistant Secretary of Labor of the United States, for violation of the Immigration Act of February 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a et seq.); that the said aliens entered without inspection, and that they were persons likely to become public charges at the time of their entry. The petitioners are duly held in custody and brought before the

court. The hearing in each case is upon the writ and the return thereon.

It appears by the testimony taken before Inspector Horne that both petitioners came to this country between 1905 and 1908; that they were married in 1911; that both petitioners made a trip to Canada in October, 1924, the husband having before that time taken out his first naturalization papers; that, prior to their last entry from Canada, he had been convicted of a violation of the liquor laws, and that his family had been supported by the town of Rumford; and that, since his last entry, he has been again convicted of a violation of the liquor laws, and at that time his family was supported by the town of Rumford. Before the inspector he testified, among other things, as follows:

"Q. You have lived continuously in the United States ever since 1905? A. Yes; most of the time in Rumford.

"Q. What is your occupation? A. I used to be a woodsman and river driver, but these last two years, two or three years, I have been dealing in booze, bootlegging, breaking the law. I might as well own up to it. I couldn't live and support my family on $2 or $3 a day.

"Q. How many times have you been arrested? A. Three times—once in Portland, on a mistaken charge, and was released right away, and twice on booze charges. Two years ago I paid $100 and costs and served 60 days in jail, and this year I paid $150 and costs and served 90 days. I was released May 4th.

"Q. All these fines and sentences were on charges of violation of liquor laws? A. Yes.

"Q. Were you guilty? A. Yes.

"Q. Are you a drinking man yourself? A. Yes; and that is mainly what has led to my trouble. I would have been all right, if I had left the booze alone; but I got to drinking too heavily. I am just getting over a drunk now, and am all nervous and shaky. * * *

"Q. Have you or your family ever received charity aid in any form? A. Yes; both times when I was in jail, my family were supported by the town."

The wife, Florida Guimond, testified, among other things, as follows:

"Q. On your return from a subsequent trip to Canada you paid a head tax at Island Pond, Vt., on August 19, 1920, did you not? A. Yes.

"Q. Since that time have you been out of the United States for as long as six months at any one time? A. No.

"Q. When did you last go to Canada? A. Last fall.

"Q. How long did you stay? A. Nine days.

"Q. Is that the trip that your husband mentioned in his testimony? A. Yes.

"Q. On your return, did either you or he make any false statements to the officer? A. No.

"Q. About what date was it when you came back to the United States? A. About October 1, 1924.

"Q. Your husband had previously served a jail sentence and paid a fine for violation of the liquor laws of the United States, had he not? A. Yes.

"Q. And you had previously received charity or pauper aid from the town here? A. Yes. * * *

"Q. How many children have you? A. four.

"Q. What are their names and ages, and where were they born? A. Alice is 13, Archie will be 12 next month, Amanda is 8, Anita will be 7 in October, and Fred is 5. They were all born in Rumford.

"Q. Do you wish to take them with you to Canada, if deported? A. Yes.

"Q. Have you anything further to say as to why you should not be deported? A. We would like to stay here. All our children were born here and we have a home here. We have none in Canada, and I don't see how we can make a living there."

[1] The Act of February 5, 1917, by section 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), fixes the classes of aliens who shall be excluded from admission to United States. Among these classes are "persons likely to become a public charge." Section 19 of the above act (section 4289¼jj) provides that "at any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported." It is clear that, if the petitioners had remained in this country after they came here several years ago, the Immigration Department could not now deport them; but it is also clear that Congress has seen fit to provide that, even after a temporary absence from this country, their coming back is to be regarded as their "entry." The time of the re-entry after the temporary absence is therefore the date from which any limitation runs. Lapina v. Williams, 232 U. S. 78, 34 S. Ct. 196, 58 L. Ed. 515; Lewis v. Frick, 233 U. S. 291, 34 S. Ct. 488, 58 L. Ed. 967. It

is my duty, then, to inquire whether the testimony shows that at the time of entry these petitioners were "persons likely to become a public charge."

[2] In Ex parte Horn (D. C.) 292 F. 455, this clause has received a fair interpretation. In order to be a public charge, a man may not be a technical pauper; but is he likely to become a charge upon the municipality in which he lives or upon the public? In the instant case the record clearly shows that the petitioners had a fair trial upon this point. The testimony before the inspector is sufficient to sustain the allegation that the petitioners were "persons likely to become a public charge." I have already quoted from the testimony of the petitioners themselves upon this point. It is evident that, prior to their last entry, the husband had been sentenced for the commission of a crime to the Oxford county jail, and during his period of imprisonment his family had been supported by the town of Rumford; that during this year, and since their last entry, which is within the five-year period, covered by section 19 of the act, the husband was again sentenced for violation of the liquor laws and served 90 days in jail; and that during that time his family was supported by the town of Rumford.

[3] The testimony of the petitioners shows the character of the husband's occupation, and that they are still likely to become a public charge. The fact that the alien has declared his intention to become a citizen does not affect the power of Congress to order deportation. U. S. v. Uhl, 211 F. 628, 128 C. C. A. 560.

[4] It is urged by the petitioners that Act Feb. 5, 1917, § 3 provides that:

"Aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Secretary of Labor, and under such conditions as he may prescribe."

But it does not appear that any application has been made to the Secretary of Labor; and hence the petitioners were not admitted, and could not be admitted, under this provision.

[5] The petitioners also seek to apply the law of former Immigration Acts, as shown in Lau Ow Bew v. United States, 144 U. S. 47, 12 S. Ct. 517, 36 L. Ed. 340. The above case involved the construction of the Chinese Restriction Act of May 6, 1882 (Comp. St. §§ 4290–4302, 4359), and was based in part upon the language of the particular statute and in part upon the fact that our treaty with

China gave to Chinese merchants domiciled in the United States the right of egress and ingress, and other rights, privileges, and immunities enjoyed in this country by the citizens or subjects of the most favored nation. That case is fully considered in Lapina v. Williams, 232 U. S. 78, 89, 34 S. Ct. 196, 58 L. Ed. 515. It must be noted that the act of 1917 applies to "aliens," and not merely to "immigrant aliens," as was provided by certain former statutes.

I am compelled to decide the case of these unfortunate petitioners under the rules which Congress has provided. The testimony clearly shows that the petitioners have had a fair trial and that the inspector had sufficient evidence upon which to find that they were both "persons likely to become a public charge." Having come to this conclusion, it is not necessary to enter into any further question raised by the record.

The result is that the writ of habeas corpus is dismissed, and the petitioners remanded to the custody and control of the respondent.