## UNITED STATES ex rel. PALERMO v. SMITH, District Director of Immigration.

(District Court, W. D. New York. March 25, 1926.)

1. Aliens ⚖═53—Deportation is not authorized for conviction before entry, where there was complete pardon (Immigration Act 1917, § 19 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj]).

Provision of Immigration Act 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), for deportation of alien who was convicted prior to entry, is inapplicable, where there was royal decree granting complete pardon, it wiping out the offense and consequent conviction, and this though the section expressly provides that the provision for deportation for conviction after entry shall not apply in case of pardon.

2. Aliens ⚖═54(9)—Finding by board that alien was a person likely to become a public charge at time of entry held not sustained by evidence.

Finding by board of special inquiry in deportation proceeding that alien was a person likely to become a public charge at time of entry is not sustained by the evidence, it being shown without contradiction that he then had $1,200 in cash, and that other means of obtaining support were open to him.

Habeas Corpus. Proceeding by the United States, on the relation of Nicholo Palermo, against Shirley D. Smith, District Director of Immigration. Writ allowed, and relator discharged.

Coonley & Sapowitch, of Buffalo, N. Y. (Robert L. Strebel, of Buffalo, N. Y., of counsel), for relator.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y. (Henry McK. Erb, Asst. U. S. Atty., of Buffalo, N. Y., of counsel), opposed.

HAZEL, District Judge. [1] 1. The relator, a native of Italy and 73 years of age, came to this country in 1919, and now lives with his son, a naturalized citizen of the United States. On his examination before the board of special inquiry he admitted that in 1882 he was jointly convicted in Italy with another of the crime of murder, and sentenced to death, but later on commuted to life imprisonment. After his 37 years' imprisonment, he, in January, 1919, about 11 months before his arrival here, was pardoned by royal decree and released from prison. The record also shows that the relator's associate on his deathbed confessed that he alone committed the crime, and that the relator was not involved in its commission. There was a question as to whether a pardon was granted by royal decree, or whether it constituted a commutation of sentence only. A subsequent certificate from the superintendent of the prison where the relator was incarcerated shows that the decree of release was equivalent to a grant of a complete pardon.

In this country the effect of a pardon removes all taint of the crime and all the disabilities flowing therefrom. Indeed, it is held in Ex parte Garland, 4 Wall. 333, 18 L. Ed. 366, that "it blots out all existence of guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense. * * * It makes him, as it were, a new man, and gives him a new credit and capacity." The royal decree pardoning the relator is entitled to conclusive effect, as it wipes out the offense and consequent conviction.

The contention of the government that section 19 of the Immigration Act of 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), indicates the granting of the pardon is wholly immaterial, since the act specifically relates to commission of a crime or admission of a crime involving moral turpitude prior to entry. But this contention is deemed unsound. That section 19 specifically relates to a provision relating to pardon, as applied to aliens who have been convicted of a crime involving moral turpitude within five years in this country, cannot be given the effect of depriving the relator of the benefit of the pardon, even though the statute makes no reference to a pardon for conviction prior to entry.

[2] 2. The finding that the relator was a person likely to become a public charge at the time of his entry is not sustained by the evidence. It is shown without contradiction, that at the time of his arrival the relator had $1,200 in currency and that other means of obtaining substantial support were open to him. His hearing before the board of special inquiry was not fair, as that term has been defined.

The writ is allowed, and the relator discharged from custody.