## Ex parte RILEY.

(District Court, D. Maine, N. D.    June 28, 1926.    Memorandum, July 19, 1926.)

1. Aliens ⚖➣54(16)—Order of deportation is conclusive, unless proceedings were manifestly unfair, or there was clear abuse of discretion.

A departmental order of deportation is final and conclusive, unless it appears that the proceedings were manifestly unfair, or that there was a clear abuse of discretion.

2. Aliens ⚖➣54(17)—Findings on which order of deportation is based are final, if supported by any evidence.

If there is any evidence to sustain the findings on which an order of deportation is based, and no constitutional rights have been violated, the departmental action is final.

3. Aliens ⚖➣49—Aliens likely to be imprisoned for crime are subject to exclusion, as likely to become a "public charge" (Immigration Act Feb. 5, 1917, § 3 [Comp. St. § 4289¼b]).

Statute excluding aliens likely to become a "public charge" covers, not only those wholly lacking means of support, but those who are likely to be boarded at public expense for violation of our laws.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Public Charge.]

4. Aliens ⚖➣54(9)—Orders of deportation held sustained by evidence that alien before entry was avowed and persistent violator of prohibition laws.

Evidence that an alien was an avowed and persistent violator of the prohibition laws before his formal entry, and had been twice convicted therefor, held to sustain an order for his deportation on the ground that his entry was in violation of law, as one likely to become a public charge.

Habeas Corpus.    Petition by one Riley for writ of habeas corpus.    Denied.    Motion for rehearing denied.

Frederick R. Dyer, U. S. Atty., of Portland, Me., for the United States.

John B. Merrill, of Bangor, Me., for respondent.

PETERS, District Judge.    The petitioner questions the validity of a warrant for his deportation as an alien in this country in violation of law, issued by the Commissioner of Immigration and approved by the Secretary of Labor, under which he has been arrested.

The writ of habeas corpus having issued and a hearing had, it appeared that the proceedings were regular and in conformity with Act Feb. 5, 1917, § 19 (Comp. St. § 4289¼jj), and that the arrest and deportation were authorized by law, provided there was any evidence to sustain the finding that the petitioner was in the country illegally.

[1] It is well established that, in reviewing departmental actions under a statute of this nature, the conclusions and proceedings of the department are to be taken as final and conclusive, unless it appears that the proceedings were manifestly unfair, or that there was a clear abuse of the discretion given by the statute.

[2] If there is any evidence to sustain the findings, and no constitutional rights have been violated, the departmental action is final.    U. S. v. Hughes (D. C.) 278 F. 262, and cases cited.

The ground upon which the action of the Department of Labor is based is the claim that in July, 1924, when Riley entered the country, he was one of a class excluded by law, to wit, a "person likely to become a public charge."

From the evidence it appears that there was no probability of his becoming a pauper, but that he was a persistent and avowed violator of the prohibition laws, from which it is inferred by the department that he was likely, sooner or later, to get into jail, where he would be a public charge.

[3] I consider that the statute (section 3 [Comp. St. § 4289¼b]) excluding certain classes of aliens covers, not only those who are entirely lacking means of support, but those who are likely to be boarded at public expense for violation of our laws.    The statute makes separate classes of "paupers" and "persons likely to become a public charge."

It was held by Judge Hale, in this district, in Guimond v. Howes (D. C.) 9 F.(2d) 412, that in order to become a public charge a man need not be a technical pauper; that if he is likely to become a charge upon the public the requirements of the statute are answered.    See, also, Ex parte Horn (D. C.) 292 F. 455;    Ex parte Reeves (D. C.) 292 F. 766;    Ex parte Britten (D. C.) 293 F. 61.

[4] At the hearing given Riley under the authority of the department warrant, in February, 1925, held at the penitentiary at Atlanta, where he was serving a sentence for conspiracy to violate the National Prohibition Law (Comp. St. § 10138¼ et seq.), he testified that he had been convicted twice before, in 1922 and in 1923, for actual violation of the same law, and that he was "handling liquor on a commercial basis."    It also appeared that at the time of entry in 1924 two indictments were pending against Riley in the state court for violation of the state prohibition law, upon

which imprisonment could follow conviction, upon both of which indictments capiases had issued in November of 1923. As a matter of fact, both these indictments were nol. prossed in May, 1925; the reason for such action, according to the certificates on the back of the indictments, signed by the presiding justice and the county attorney, as required by the state law, being stated to be, "Respondent deported by federal government." This statement was not entirely prophetic, because a warrant of deportation had issued in March, 1925, although stayed in execution until the end of his imprisonment.

Riley was convicted at the November term, 1924, of this court, and sentenced to 18 months at Atlanta for the conspiracy mentioned.

So it appears that when Riley entered the country, at Calais, in 1924, he was actively engaged in the liquor business, had been convicted twice in this court, and that there were two indictments in the state court upon which warrants for his arrest had been issued.

Under these circumstances, I cannot say that the Department of Labor had no evidence to support their finding that he was likely to become a public charge in some jail. Their judgment was certainly justified by the subsequent events, although I do not base my decision upon that fact.

It appears that Riley made a formal entry into the country from Canada in 1920, and dwelt with his family in Calais thereafter, going and coming to and from Canada very frequently. It is claimed in his behalf that the entry of July, 1924, was a casual one from a short trip to Canada, and that it was not an "entry" under the statute. The law seems to be otherwise. Guimond v. Howes, supra.

The result is that the writ of habeas corpus must be dismissed, and the respondent remanded to custody.

### Memorandum.

Since the decision and entering of decree in this case, June 28th, there has been filed a motion for a rehearing on the ground that it has been discovered by Riley's counsel that on March 30, 1926, Riley was permitted by the immigration officers at Calais to enter the country again after a trip into Canada. At the last hearing of this case, which was on June 28th, Riley, being present, complained through his counsel that on another occasion a few weeks previous, having made a short trip into Canadian waters, he was not permitted by the immigration officers to enter, although the habeas corpus proceeding was then pending.

It is obvious that at the hearing referred to Riley knew as much about one incident as the other. I am unable to perceive, however, how either would necessarily affect the result of the habeas corpus proceeding. The sole question there was whether the department had proceeded legally in issuing a warrant for deportation. I do not regard the new evidence as sufficiently important to change my decision, and certainly it is not newly discovered.

The motion being directed to my discretion, I feel compelled to deny it.