UNITED STATES ex rel. KOWALENSKI v. FLYNN, District Director of Immigration.

(District Court, W. D. New York. January 26, 1927.)

1. Aliens ⬤⟿53—Duration of absence in foreign country is immaterial, as respecting liability for deportation for offense committed within five years after re-entry (Immigration Act 1917, § 19 [Comp. St. § 4289¼jj]).

Duration of alien's absence in foreign country, as respecting liability for deportation under Immigration Act 1917, § 19 (Comp. St. § 4289¼jj), for offense involving moral turpitude committed within five years thereafter, is immaterial, whether absence was only temporary, for recreation, visiting, or business.

2. Aliens ⬤⟿53—That alien, crossing Niagara river for picnic, had no intention of remaining in foreign country, held immaterial, as affecting deportation for offense committed within five years after re-entry (Immigration Act 1917, § 19 [Comp. St. § 4289¼jj]).

That alien, in visiting foreign country by crossing Niagara river for picnic, had no intention of remaining away, and came back on same

day by same boat, held immaterial, in determining liability for deportation under Immigration Act 1917, § 19 (Comp. St. § 4289¼jj), for offense committed within five years after re-entry.

3. Aliens ⬤⟿53—Disabilities growing out of offense requiring deportation are removed by pardon (Immigration Act 1917, § 19 [Comp. St. § 4289¼jj]).

Disabilities growing out of commission of offense involving moral turpitude, so as to require deportation of alien, within Immigration Act 1917, § 19 (Comp. St. § 4289¼jj), are removed by pardon.

Habeas Corpus. Proceeding by the United States, on the relation of Stanislaus Kowalenski, or Stanley Kowalewski, against William Flynn, District Director of Immigration. Relator remanded to custody of immigration authorities.

Weimar & Davis, of Buffalo, N. Y., for petitioner.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y. (Henry McK. Erb, Asst. U. S. Atty., of Buffalo, N. Y., of counsel), for respondent.

HAZEL, District Judge. [1, 2] The question submitted is whether the return of the relator to this country when he (a lad of over 16 years at the time of his examination at the Elmira Reformatory, and now 18) went from Buffalo to Ft. Erie Beach by boat to picnic for a day, was a new entry into the United States, and whether, by his subsequent offense, admittedly involving moral turpitude, committed within five years following his day's outing, he submitted himself to deportation under section 19 of the Immigration Act of 1917 (Comp. St. § 4289¼jj).

Many adjudications have held, and I must hold, that the duration of absence in a foreign country, even though divided only by a span across Niagara river, has nothing to do with the case. Lapina v. Williams, 232 U. S. 78, 34 S. Ct. 196, 58 L. Ed. 515; Lewis v. Frick, 233 U. S. 291, 34 S. Ct. 488, 58 L. Ed. 967; Guimond v. Howes (D. C.) 9 F.(2d) 412; U. S. ex rel. Ueberall v. Williams (D. C.) 187 F. 470; Ex parte Piazzola, 18 F.(2d) 114 (decision by Judge Knox, unreported); U. S. ex rel. Ciccerelli v. Curran (C. C. A.) 12 F.(2d) 394.

In U. S. ex rel. Ueberall, supra, a case where the departure and re-entry involved a sight-seeing trip to Niagara Falls, the relator coming from the American side to the Canadian, where he remained for an hour, his coming back was held by Judge Learned Hand to be a new entry. This principle was

again reaffirmed by the Circuit Court of Appeals for this district in U. S. ex rel. Niels Peter Claussen v. Curran, 16 F.(2d) 15, decided December 6, 1926. In that case the alien originally entered the United States in 1912, a member of the crew of a British ship, landing at Norfolk, Va. He next shipped on an American schooner, and continued to sail on American vessels up to the time of his conviction, in June, 1921, of an offense involving moral turpitude in May, 1921. As one of the crew on an American schooner he went to foreign parts, and signed off, on his return, at Boston in 1916. The court held that this entry was a re-entry, and that it logically followed that one who crosses the international bridge at Niagara Falls from the United States, and, after viewing the falls from the Canadian side, returns to this country, if he be an alien and thereafter within five years is convicted of a crime involving moral turpitude, would be deportable.

Hence it is immaterial whether an alien's departure from the United States was only temporary, for recreation, visiting, or business. Nor does it make any difference, as the decisions point out, that he had no intention to remain away, and came back on the same day by the same boat. He was asked by the immigration inspector, on his examination, if there was anything he wished to say why he should not be deported to the country whence he came, and replied:

"I am too young to realize what such a deportation would mean to me, or in what way it will affect my future. I have been brought up in this country, and I know nothing of any other, except that I was born in Poland; but I know of no relation of mine in Poland to whom I can appeal for guidance or assistance, if I am sent there. If it is the law of this country that I must be deported, then I don't know what to say."

It appears that, prior to his last conviction, the relator, in 1922, was arrested for delinquency and placed on probation for a period of 6 months, and again in 1923, when he was sentenced to 13 months in New York State Industrial School; that his father declared his intention to become a citizen, but has failed in naturalization because of his inability to read and write.

[3] The circumstances of the case, however, suggest that perhaps relief might be afforded by the Secretary of Labor by application of rule 12, subd. (a), passed July 1, 1925, which substantially provides, as I read the rule, that aliens returning, after temporary absence, to an unrelinquished United States domicile, may be admitted, in the discretion of the Secretary of Labor, under such conditions as he may provide. It is recommended, under this rule, that the relator's temporary visit to Canada be demitted, or that the relator be given an opportunity to apply for a pardon, since, as ruled in U. S. ex rel. Nicolo Palermo v. Smith (D. C.) 11 F.(2d) 980, the disabilities growing out of the commission of the offense would, no doubt, be removed by a pardon. In U. S. ex rel. Walter Klonis v. Davis, 13 F.(2d) 630, a case wherein an alien had twice been convicted of a crime involving moral turpitude, and sentenced each time to more than one year's imprisonment, Judge Learned Hand, writing for the Circuit Court of Appeals, said:

"At any rate we think it not improper to say that deportation under the circumstances would be deplorable. Whether the relator came here in arms, or at the age of 10, he is as much our product as though his mother had borne him on American soil. He knows no other language, no other people, no other habits, than ours; he will be as much a stranger in Poland as any one born of ancestors who immigrated in the seventeenth century. However heinous his crimes, deportation is to him exile, a dreadful punishment, abandoned by the common consent of all civilized peoples. Such, indeed, it would be to any one, but to one already proved to be incapable of honest living, a helpless waif in a strange land, it will be utter destruction. That our reasonable efforts to rid ourselves of unassimilable immigrants should in execution be attended by such a cruel and barbarous result would be a national reproach."

The quoted language of the Circuit Court of Appeals, with perhaps better reason, is applicable here, considering the youth of the relator; but I am constrained to rule that the weight of authority above cited requires that the relator be remanded to the custody of the immigration authorities.