UNITED STATES ex rel. KWONG HAI
CHEW v. COLDING et al.
THE SIR JOHN FRANKLIN.
No. M-1528.

United States District Court
E. D. New York.
May 11, 1951.

Ira Gollobin, New York City, for relator.

Frank J. Parker, U. S. Atty., Brooklyn, N. Y., for respondent Edw. J. Shaughnessy and others. Morris K. Siegel, Asst. U. S. Atty., Brooklyn, N. Y., Louis Steinberg, District Counsel, and Max Blau, Attorney, United States Department of Justice, Immigration and Naturalization Service, New York City, of counsel.

GALSTON, District Judge.

The facts developed at the hearing on the return of this writ of habeas corpus are substantially agreed upon.

It appears that the relator is of the Chinese race, having originally arrived here in 1941 as a seaman. Following his occupation, he made entries as a seaman until January 10, 1945. On June 22, 1946 he mar-

ried a native born citizen of the United States, and subsequently applied for and secured suspension of a deportation order. At that time the Immigration and Naturalization Service made an investigation, as a result of which they found him eligible for discretionary release of the order of deportation.

In November 1950 he signed articles for service as a seaman on the S. S. Sir John Franklin, and at that time he was screened by the Coast Guard and passed by them. On the return of the vessel, on the voyage which began in November 1950, he was detained on the vessel when it docked at Pier 7, Bush Terminal, Brooklyn, New York, on March 29, 1951, and was held upon the instructions of the Immigration and Naturalization Service without bail.

He seeks to be relieved of what he claims is an arbitrary and capricious restraint and a denial of due process of law in violation of the Fifth Amendment of the Constitution, and seeks a determination of this court with respect to the legality of his restraint.

The return of the writ of habeas corpus, filed by the United States on behalf of the Immigration and Naturalization Service, alleges that the relator is an alien, a native and citizen of China, who last arrived in the United States at the port of San Francisco on March 10, 1951, as a member of the crew of The Franklin, for the purpose of resuming residence in the United States after a voyage abroad. He was examined on that day by an immigration inspector concerning his eligibility for admission into the United States. On the basis of information of a confidential nature, the immigration inspector temporarily excluded the relator under section 175.57 of Title 8 of the Code of Federal Regulations as an alien whose entry is deemed prejudicial to the public interest. Thereupon an order was served upon the master of the vessel asking him to detain the relator on board the vessel at all United States ports. Thereafter The Franklin proceeded coastwise and arrived at the port of New York on March 29, 1951. Upon its arrival the temporary exclusion of the relator was continued, and a further order served on the master on March 30, 1951 to detain the relator on board the vessel at all United States ports. Under the provisions of the federal regulations referred to, the case was reported to the Attorney General for determination as to whether the relator should be excluded permanently as an alien whose entry would be prejudicial to the public interest.

On the return of the writ of habeas corpus on April 16, 1951, it appeared that the Attorney General had not yet reached a determination, and accordingly the proceedings were continued to await such determination.

On April 19, 1951, Oswald I. Kramer, an attorney in the office of the District Counsel, Immigration and Naturalization Service of the Department of Justice, executed and filed an amended return to the writ of habeas corpus, which recites that on April 18, 1951, the Acting Attorney General of the United States, under the authority contained in section 175.57(b) of Title 8 of the Code of Federal Regulations, ordered that the relator be denied a hearing before a board of special inquiry, and that his temporary exclusion be made permanent. On the same day the relator was placed in the custody of the Immigration and Naturalization Service on Ellis Island for safe keeping on behalf of the master of The Franklin.

The amended traverse to the amended return sets up some new matter which is alleged to support legal inferences sought to be drawn by the petitioner.

It appears that the petitioner served in the merchant marine of the United States during the Second World War, and is in possession of a letter from the President of the United States thanking him for his war service. The amended traverse also alleges that in November 1950, the petitioner was screened and passed by the Coast Guard, and that there has been no conduct on his part which would place him in any different position at this time than he was in at that date.

Petitioner has a pending motion in the United States District Court for the Southern District of New York to place his petition for naturalization on the calendar. He asserts that prior to his residence in this country he was a resident and native of

594

China, and that under present conditions it would be impossible to secure travel documents to send the petitioner to China.

The sole question for determination by this court is whether the petitioner is in lawful custody. At first blush it would seem extraordinary that one legally residing in this country, even though an alien, could be barred from re-entry and ordered deported in the absence of any hearing before any board. Basically the question is whether this court has jurisdiction to review the act of the Acting Attorney General in the circumstances. It would almost seem that in the absence of a statutory power, explicit or implicit, such proceedings on the part of an officer of the Government would be in the nature of a star chamber determination.

The Presidential Proclamation No. 2523 of November 14, 1941 (2 C.F.R.1943, 270–272) provides that no alien shall enter the United States unless he is in possession of a valid, unexpired permit to enter, and further, no alien shall be permitted to enter if it appears to the satisfaction of the Secretary of State that such entry would be prejudicial to the interest of the United States as provided in the rules and regulations authorized to be prescribed by the Secretary of State with the concurrence of the Attorney General. By a later proclamation, issued August 17, 1949, No. 2850 (14 Fed. Reg. 1543), the Proclamation No. 2523 was amended so as to bar any alien from applying for admission even with a valid permit to enter, if it appears to the satisfaction of the Attorney General that such entry would be prejudicial to the interests of the United States.

Section 175.53; Title 8, Code of Federal Regulations, specifies the classes of aliens whose entry into the United States is deemed to be prejudicial to the public interest; and section 175.57 of the same title provides, in sub-paragraph (b), that the Attorney General, in the case of an alien temporarily excluded by an official of the Department of Justice on the ground that he is or may be excludable under one or more of the categories set forth in section 175.53, may deny the alien a hearing before a board of special inquiry.

Now as to the interpretation, effect and validity of these regulations: it must be observed that the admission of aliens is a privilege granted upon such terms as the United States may prescribe, Nishimura Ekiu v. United States, 142 U.S. 651, 12 S.Ct. 336, 35 L.Ed. 1146; Fong Yue Ting v. United States, 149 U.S. 698, 13 S. Ct. 1016, 37 L.Ed. 905; and more particularly a late case which has aroused much public interest, U. S. ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 70 S.Ct. 309, 312, 94 L.Ed. 317. Section 175.57 was considered in the U. S. ex rel. Knauff v. Shaughnessy case. The import of the opinion in that case is that "When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power.

"Thus the decision to admit or to exclude an alien may be lawfully placed with the President, who may in turn delegate the carrying out of this function to a responsible executive officer of the sovereign, such as the Attorney General."

The opinion adds, "The action of the executive officer under such authority is final and conclusive. Whatever the rule may be concerning deportation of persons who have gained entry into the United States, it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien."

In the Knauff case, the Attorney General concluded, on the basis of confidential information, that the public interest required that the petitioner be denied the privilege of entry into the United States, and he denied the petitioner a hearing on the matter because in his judgment the disclosure of the information on which he based that opinion would itself endanger the public security.

The petitioner in this case seeks to differentiate his position from that of the petitioner in U. S. ex rel. Knauff v. Shaughnessy, but in essence their status is the same. They are both aliens, and the fact that prior to his shipping on the S. S. Sir John Franklin he was a legal resident

of this country does not diminish the authority of the Attorney General on the one hand, nor on the other does it give judicial review where the Congress failed to establish such jurisdiction in the court. However powerful the dissenting opinions were in U. S. ex rel. Knauff v. Shaughnessy, this court is, of course, constrained to act in accordance with the decision of the court.

Finally it must be pointed out that the Government's position that a resident alien seeking admission to the United States upon his return from abroad is subject to all exclusion provisions of the immigration laws is sound. Each return of an alien from abroad is a new entry. United States ex rel. Volpe v. Smith, 289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298; United States ex rel. Roovers v. Kessler, 5 Cir., 90 F.2d 327; McCandless v. United States ex rel. Pantoja, 3 Cir., 44 F.2d 786; United States ex rel. Siegel v. Reimer, D.C., 23 F.Supp. 643.

In Lewis v. Frick, 233 U.S. 291, 34 S.Ct. 488, 491, 58 L.Ed. 967, which discussed the case of the return of an alien previously domiciled in this country, it was said: "* * * if he departed from the country, even for a brief space of time, and on reentry brought into the country a woman for the purpose of prostitution or other immoral purpose, he subjected himself to the operation of the clauses of the act that relate to the exclusion and deportation of aliens, the same as if he had had no previous residence or domicil in this country." See also Lapina v. Williams, 232 U. S. 78, 34 S.Ct. 196, 58 L.Ed. 515.

I find also that the relator's deportation under the exclusion order has not been unreasonably delayed.

Finally the pendency of his petition for naturalization is no bar to deportation in the circumstances recited. See Internal Security Act of 1950, sec. 27, 8 U.S.C.A. § 729(c), which prohibits the naturalization of any person "against whom there is outstanding a final finding of deportability * * *". See also United States ex rel. Jankowski v. Shaughnessy, 2 Cir., 186 F.2d 580.

Accordingly the writ of habeas corpus will be dismissed and the relator remanded to the custody of the respondents. The conclusion is reached with some reluctance, not because the court has not the power of judicial review under the statute, but rather on the ground that the relator who, after a period of ten years, up to November 1950, when he shipped on the S. S. Franklin, had been a legal resident of the United States, is now about to be deported without knowing what charge as been levelled against him. Settle order.