## UNITED STATES v. BITTY.

(Circuit Court, S. D. New York. September 10, 1907.)

1. PROSTITUTION—NATURE AND ELEMENTS.

Prostitution is the act of permitting illicit intercourse for hire—an indiscriminate intercourse, or what is deemed public prostitution.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Prostitution, § 1.]

2. ALIENS—IMMIGRATION STATUTE—IMPORTATION OF WOMAN FOR "OTHER IMMORAL PURPOSE."

In the provision of Immigration Act Feb. 29, 1907, c. 1134, § 3, 34 Stat. 899, making it a felony "to import * * * into the United States any alien woman or girl for the purpose of prostitution or for any other immoral purpose," the words "any other immoral purpose" must be construed with reference to the preceding word "prostitution," and to relate only to a like immoral purpose, and, so construed, cannot be held to include concubinage.

On Demurrer to Indictment.

Henry L. Stimson, U. S. Atty.

E. A. Alexander, for defendant.

HOUGH, District Judge. The indictment demurred to alleges that Bitty did "feloniously import into the United States of America from a foreign country, to wit, England, a certain alien woman * *. * for an immoral purpose, * * * and it was the purpose of the said John Bitty, in bringing and importing the said alien into the United States as aforesaid, that she shall live with him as his concubine." The act under which this indictment is found, commonly known as the "Immigration Act of 1907" (Act February 29, 1907, c. 1134, § 3, 34 Stat. 899), declares that:

"Whosoever shall, directly or indirectly, import or attempt to import into the United States any alien woman or girl for the purpose of prostitution or for any other immoral purpose, or whoever shall hold or attempt to hold any alien woman or girl for any such purpose in pursuance of such illegal importation, or whoever shall keep, maintain, control, support or harbor in any house or other place, for the purpose of prostitution or for any other immoral purpose any alien woman or girl within three years after she shall have entered the United States,"

—shall be deemed guilty of a felony, and may be punished up to five years' imprisonment and $5,000 fine.

The section just quoted, therefore, creates three distinct felonies, each punishable, viz.: (a) The importation of a woman for the pur-

pose of prostitution or for any other immoral purpose; (b) the holding of such woman in pursuance of such illegal importation; and (c) the maintenance, supporting, or harboring in any house or other place, for the purpose of prostitution or for any other immoral purpose, any alien woman within three years after she shall have entered the country.

In plain language, this defendant is charged with having either brought his mistress into the United States, or with having brought here a woman who, so far as his desires go, shall be his mistress, if she is not already. He is thus accused of the first offense enumerated in the section above quoted; and the indictment, therefore, must stand or fall upon an interpretation of the words "or for any other immoral purpose." I adopt the definition of prostitution given in Commonwealth v. Cook, 12 Metc. (Mass.) 93, at page 97; i. e.:

"The act of permitting illicit intercourse for hire—an indiscriminate intercourse, or what is deemed public prostitution."

It may be that, as the court remarked in the case cited, this defendant is guilty of open violation of the divine law and of grossly immoral acts, so that such a case is not "the most favorable for a dispassionate consideration of questions of law, the decision of which involves the question whether the party defendant shall be punished, or discharged as not guilty of any offense cognizable by the statute." It is, however, necessary to apply to this statute, as to any other, the ordinary rules of construction, concerning which the discussion at bar has not revealed any substantial difference of opinion between opposing counsel.

It may be admitted that the immigration act of 1907 is in its general scheme remedial; and it is not denied that it is the duty of the court to give to each intelligible word of the statute its exact and precise meaning according to common understanding of the intent of the Legislature, so far as ascertainable from legal sources; and that intent, if expressed in apt language, must be enforced as long as the statute is in operation, though the result be cruel or ridiculous. So far as this statute is concerned I have been directed to no indication of legislative intent other than the language of the statute itself, except the report of the committee of the House of Representatives on immigration, made to the Fifty-Ninth Congress at its first session (No. 4,912), wherein it is stated that the scope of section 3 of this statute is extended beyond that of the corresponding section of the act of 1903, "so far as it relates to the immigration of prostitutes, in order effectively to prohibit undesirable practices alleged to have grown up." This I take to mean that the words "or for any other immoral purpose" have been added to the word "prostitution," in order to prevent undesirable practices alleged to have grown up in relation to the immigration of prostitutes. Upon general principles the added words must be understood as meaning "for any other like immoral purpose," so that the question becomes this: whether a man who brings his mistress into this country is committing an act ejusdem generis with bringing in a prostitute.

Concubinage is the act upon the part of the woman of cohabiting with a man without ceremonial marriage, or consent and intent good

at common law. A discussion of the difference between this status and that of the prostitute would be both needless and nauseating. It suffices to say that from any point of view, historical, social, or legal, I do not think that the mistress is near enough to the prostitute to be included by general words in a statute directed against the latter unfortunate class. Considering the section above quoted from a point of view perhaps more technical, it is, of course, highly penal, and to be given, in favor of the liberty of the citizen, the narrowest construction consistent with the plain significance of its words. Many other statutes for several hundred years have contained similar clauses, and, though it is certainly too late in the day to look with approval upon the doctrine that a statute making the "stealing of sheep or other cattle" a felony is too loosely expressed to warrant a conviction for stealing any other animal than a sheep (1 Black. Comm. 88), yet numerous cases can be cited, from Ex parte Hill, 3 C. & P. 225, holding that, under a statute making it a crime to maim "an ox, cow, heifer, sheep or other cattle," it was not an offense to commit a like act against a bull, to People v. Richards, 108 N. Y. 137, 15 N. E. 371, 2 Am. St. Rep. 373, holding that, under a statute making it burglary to break and enter "any shop, store, booth, tent, warehouse or other building," one who broke into and entered a tomb or mausoleum was guilty of no crime, all speaking in the same strain. Within the line of decisions, both ancient and modern, illustrated by the above citations, I do not think the words "other immoral purpose," when used as modifying the word "prostitution," can be held to include concubinage.

I am the more willing to arrive at this result from observing what would be the effect of a contrary holding as applied to the third offense created by the section under consideration:

"Whoever shall keep * * * in any house * * * for the purpose of prostitution, or for any other immoral purpose any alien woman * * * within three years after she shall have entered the United States,"

—shall be guilty of a felony. In other words, if the offense charged in this indictment be within the act, any man who keeps an alien mistress before she has been three years in this country becomes a felon, even though (so far as the language of the statute is concerned) he had no knowledge whatever of her lack of citizenship. The weapon thus put in the hands of degraded women is so dangerous as to justify great insistence upon the penal character of this section and some distrust of the remedial virtue contained therein.

It remains to be considered whether any function can be assigned to the words "other immoral purpose," under the construction of the statute above indicated. It appears to me that sufficient scope is given for their application by the fact that there are others besides the unfortunate women themselves who are concerned in the trade of prostitution. The procuress, thinly disguised as the keeper of an employment agency, and her female assistants, posing as servants, are figures too sadly familiar to the courts to need enumeration or description. It is to them and their kind that the general language of the act must be applied.

The demurrer is sustained.