HANSEN v. HAFF, Commissioner of
Immigration.
No. 6921.

Circuit Court of Appeals, Ninth Circuit.
May 8, 1933.

MACK, Circuit Judge, dissenting.

Stephen M. White, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Lucas E. Kilkenny, Asst. U. S. Atty., both of San Francisco, Cal. (Arthur J. Phelan, of San Francisco, Cal., U. S. Immigration Service, on the brief), for appellee.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

SAWTELLE, Circuit Judge.

This is an appeal from an order denying a petition for a writ of habeas corpus. Appellant is a citizen of Denmark, and has been ordered deported from the United States on the ground that she entered for an immoral purpose, contrary to the provisions of the Immigration Act of February 5, 1917 (8 US CA § 136), which provides that aliens who enter the United States for the purpose of prostitution, *or for any other immoral purpose*, shall be excluded.

Appellant first came to the United States in 1922 and made her home in Los Angeles, Cal., where she was employed as a domestic servant. It appears from the record that in 1924 she became acquainted with one Bolinger, a married man, in Los Angeles, and in 1925 she commenced to have illicit relations with him. In 1926 she made a trip to Denmark, returning here in 1928. In May, 1931, she made another trip to Europe, on which she was accompanied by Bolinger. On this trip they continued their illicit relations and traveled together, for at least a part of the time, as husband and wife. They returned here together on September 6, 1931, and entered at the port of Seattle, Wash., where they registered at a hotel as husband and wife.

At a preliminary hearing before immigration inspectors the following morning, appellant admitted her previous illicit relations with Bolinger, in Los Angeles and on the trip to Europe, and that she intended to continue such relations with him until they reached Los Angeles, but that thereafter she did not intend to see him,—"I might see him, but

that is all." Bolinger also admitted their illicit relationship on the trip to Europe. Appellant denied all of these admissions at a subsequent hearing.

 However, it is not within our province to weigh the evidence. "The duty to do that is with the immigration officials and the Secretary of Labor, and the responsibility rests solely upon them, their decision being final if there is any evidence whatever to support it." United States ex rel. Bauder v. Uhl (C. C. A. 2) 211 F. 628, 633. See, also, Low Wah Suey v. Backus, 225 U. S. 460, 468, 32 S. Ct. 734, 56 L. Ed. 1165. The evidence clearly establishes that appellant entered the United States for an immoral purpose. Upon her entry at Seattle, appellant and Bolinger immediately registered at a hotel as husband and wife, and had traveled as such on their trip to and from Europe. Under all the circumstances, it might well have been found that she intended to continue her illicit relations with Bolinger after their return to Los Angeles, as well as during their journey thither.

 Appellant vigorously contends that she is not a concubine, because unlawful cohabitation, as distinguished from clandestine and sporadic intercourse, is essential to create the status of a concubine. However that may be, "we must assume that, in using the words 'or for any other immoral purposes,' Congress had reference to the views commonly entertained among the people of the United States as to what is moral or immoral in the relations between man and woman in the matter of such intercourse. These views may not be overlooked in determining questions involving the morality or immorality of sexual intercourse between particular persons." United States v. Bitty, 208 U. S. 393, 28 S. Ct. 396, 399, 52 L. Ed. 543. Whether or not appellant may be considered as a concubine, therefore, is immaterial. By her own admissions, at the time she entered the United States she did so for an immoral purpose: To continue her illicit relations with Bolinger, at least for a limited period.

 Appellant is not entitled to remain here solely by force of the re-entry permit issued to her and because of her previous residence. The act provides that: "At any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported." 8 USCA § 155. The ban of the immigration laws attaches irrespective of previous residence or domicile in this country. Lapina v. Williams, 232 U. S. 78, 34 S. Ct. 196, 58 L. Ed. 515; Lewis v. Frick, 233 U. S. 291, 34 S. Ct. 488, 58 L. Ed. 967.

Affirmed.

MACK, Circuit Judge (dissenting).

Appellant is ordered to be deported as an alien excluded by law. Act of Feb. 5, 1917, c. 29, § 19, 39 Stat. 889, 8 USCA § 155. I cannot concur in the contention that she entered this country for an "immoral purpose" within the meaning of section 3 of the Act of Feb. 5, 1917 (39 Stat. 875, 8 USCA § 136 (g), which excluded "prostitutes, or persons coming into the United States for the purpose of prostitution or for any other immoral purpose. * * *"

1. On this record appellant could not be found to have been, or to have intended to be, a concubine or mistress, even though it could be found therefrom that in returning from abroad to her residence in Los Angeles she intended to have sexual relations with her companion until their arrival and even occasionally thereafter.

The question for determination is whether or not such extramarital relations, despite the social and moral opprobrium that attaches thereto, are included within the phrase "any other immoral purpose," as used in this statute. Clearly here as in United States v. Bitty, 208 U. S. 393, page 402, 28 S. Ct. 396, 398, 52 L. Ed. 543 (1908), where a similar phrase in the Immigration Act of 1907 was construed, "in accordance with the familiar rule of ejusdem generis, the immoral purpose referred to by the words 'any other immoral purpose,' must be one of the same general class or kind as the particular purpose of 'prostitution' specified in the same clause of the statute."

The District ([C. C.] 155 F. 938) and the Supreme Courts were agreed in that case that the rule of ejusdem generis was applicable; the difference between them was whether or not a concubine was ejusdem generis with a prostitute. As to this, the Supreme Court, reversing the District Court, said: "The prostitute may, in the popular sense, be more degraded in character than the concubine, but the latter none the less must be held to lead an immoral life. * * *"

That case, however, does not justify a holding that appellant falls within the rule; on the contrary, while the concubine and the mistress are comparable to the prostitute, common understanding draws the line too sharply between those classes and the class

which indulges occasionally in extramarital relations, to permit of a construction under the ejusdem generis rule that would exclude the latter class as immoral persons like prostitutes.

2. Another reason distinct from the ejusdem generis rule, for holding that appellant is not excludable as one seeking entry "for an immoral purpose," is that, fairly construed, the "immoral purpose" must be found to be the dominant, and not a merely incidental, cause or purpose of her return.

As stated by Judge Hutcheson in sustaining the writ of habeas corpus in Ex parte Rocha, 30 F.(2d) 823, 824 (D. C. S. D. Texas, 1929), the only case cited or found in which this question was involved: " * * * The dominant and real facts in the case, * * * are not that he came into the United States for an immoral purpose, but that having gone across the river for an hour's visit, he returned to his home and his business for the purpose of pursuing the ordinary tenor of his life, and whether he did or did not have improper relations with the woman on his return is wholly immaterial, and cannot be found to be the cause or purpose of his return."

In that case there was evidence that the alien had indulged in intercourse with the woman (who had accompanied him on an hour's visit to Mexico) two or three times a month during a period of eighteen months.

Here, appellant, resident in this country, visited her parents abroad as she had done in 1926; her companion on parts of the journey had attended a convention in Vienna. So far as the record shows, both were returning to this country "for the purpose of pursuing the ordinary tenor" of their lives. Appellant's uncontradicted testimony shows that prior to leaving the United States she had been regularly employed as a cook and domestic at a salary as high as $115 per month; there would seem to be no reason to doubt her testimony that she intended to resume such work or that the same employment agency which had previously placed her would, pursuant to its promise, find such work for her on her return. It seems to me entirely clear that re-establishing herself in what had become her home city, there again to work as a cook, was the real or dominant purpose of her return to this country, and that an intention to have sexual relations with her companion until their arrival in Los Angeles or even after that time was a purpose purely incidental to her return. This is borne out by her testimony, evidently not disbelieved by the immigration officials, that: "After I got back to Los Angeles I thought I would go where I would not see him as I used to. I might see him but that is all."

That the "immoral purpose" specified in the act shall be not an incidental but the dominant purpose in coming to the United States is a construction thereof which avoids imputing to Congress the improbable intent that deportation with its grave and permanent consequences shall follow merely because in returning to her residence, there to follow her legitimate and gainful occupation, the alien may have expected to indulge in extramarital relations en route or occasionally thereafter. Even in the case of concubinage the Supreme Court has gone no further than to say, in the Bitty Case, at page 403 of 208 U. S., 28 S. Ct. 396, 399, that "the importation of an alien woman brought here *only* that she might live in a state of concubinage" (italic mine) was for an *immoral purpose*.

In my judgment, the order of the District Court should be reversed.