RILEY v. HOWES, District Director of Immigration.

(District Court, D. Maine, S. D. February 3, 1927.)

1. Aliens ⊜⇒53—Alien's going into Canada and return under bail pending deportation proceedings held a new entry.

Where alien, released under bail pending deportation proceedings, went to Canada and later re-entered without knowledge of immigration officials, such re-entry was equivalent to a new entry.

2. Aliens ⊜⇒53—Permitting alien to re-enter country to save condition of his bail bond held not to estop department from again proceeding against him.

Where alien, while released under bail pending deportation proceedings, went to Canada and was permitted to return by immigration officers to save the condition of his bond, held, officers permitting such re-entry did not estop the department from proceeding against him again, on theory that, having found him out of the country, he should have been kept out.

3. Aliens ⊜⇒72—Surreptitious entry without inspection is offense, regardless of right.

Surreptitious entry without inspection is an offense, even if person making entry has right to re-enter.

4. Aliens ⊜⇒53—Conviction of alien for violation of National Prohibition Act and subsequent surreptitious entry from Canada held to warrant deportation (Comp. St. § 10138¼ et seq.).

Evidence showing that alien, who had previously been convicted of violation of National Prohibition Act (Comp. St. § 10138¼ et seq.), and while out on bail pending deportation proceedings had gone to Canada, and, on being denied right to return, had made surreptitious entry, held to warrant deportation.

5. Aliens ⊜⇒53—Violation of National Prohibition Act is offense involving "moral turpitude" (Comp. St. § 10138¼ et seq.; Const. Amend. 18.).

Violation of the National Prohibition Act (Comp. St. § 10138¼ et seq.) is an offense

involving "moral turpitude," in view of Eighteenth Amendment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Moral Turpitude.]

**6. Aliens ⬅54(7)—There is strong presumption that one born in Canada, who all his life has held himself out as Canadian, is an alien (Comp. St. §§ 3955, 3963).**

There is a very strong presumption that one born and baptized in Canada, and who has all his life of more than 50 years acted and regarded and held himself out as a Canadian, is an alien, particularly in view of Rev. St. § 1999 (Comp. St. § 3955), and Act March 2, 1907, § 6 (Comp. St. § 3963), expressly recognizing right of expatriation.

**7. Aliens ⬅54(9)—Evidence held insufficient to show alien in fact a citizen of United States (Comp. St. §§ 3955, 3963).**

Evidence *held* insufficient to show that alien in deportation proceeding was in fact United States citizen, in view of Rev. St. § 1999 (Comp. St. § 3955), and Act March 2, 1907, § 6 (Comp. St. § 3963), expressly recognizing right of expatriation.

Habeas Corpus. Proceeding by Nelson G. Riley against Samuel H. Howes, District Director of Immigration. Writ dismissed.

John B. Merrill, of Bangor, Me., for petitioner.

William B. Nulty, Asst. U. S. Atty., of Portland, Me., for the United States.

PETERS, District Judge. This is the second writ of habeas corpus granted the petitioner in his effort to escape deportation as an alien in this country in violation of law. The decision in the first case (Ex parte Riley [D. C.] 17 F.[2d] 646), rendered June 28, 1926, after a reopening and rehearing, gives most of the history of the case up to that time. Final determination of the second case has been deferred at the request of the petitioner until he could procure evidence on the new claim, now raised by him, that he is a citizen of this country, and always has been, and thus not subject to deportation.

The warrant in the case now under consideration, dated October 4, 1926, orders deportation on grounds different in some respects from those in the first case, the recitals being:

"That he entered without inspection; that he was a person likely to become a public charge at the time of his entry; that he entered the United States within one year from the date of his exclusion under said act, consent to reapply for admission not having been granted; and that he has been convicted of or admits the commission of a

felony or other crime or misdemeanor involving moral turpitude, to wit, conspiracy and violation of the National Prohibition Act prior to entry into the United States."

It appears that the petitioner, Riley, while serving a sentence of 18 months at Atlanta penitentiary for conspiracy to violate the National Prohibition Act (Comp. St. § 10138¼ et seq.), was examined by officers of the Department of Labor on February 24, 1925. On being released from prison, February 19, 1926, he gave a three-months bond, and on May 11, 1926, surrendered himself for deportation. The first writ of habeas corpus was then issued, and, after various hearings, was dismissed on June 28, 1926. During the pendency of the first writ, Riley, then under bail, had been going from Calais, in this country, to St. Stephen, N. B., and returning. On June 4th, however, in coming into this country at that point, he was stopped and examined, and excluded by the immigration officials. On June 27th he entered without their knowledge and without inspection. On June 28th, after the decision in the first case, he was arrested by the immigration officials on the ground that he had recently entered without inspection, etc. A hearing was had on the same day, Riley being represented by the same counsel who has diligently and efficiently acted for him throughout, and the district director of immigration recommended deportation.

The matter was taken before the Board of Review, with the same result.

The warrant of deportation was issued as mentioned on October 4, 1926. This writ of habeas corpus was issued on November 4, 1926.

Deferring for the moment the question of citizenship, which will be taken up later, I have been unable to find any illegality in the proceedings of the Department of Labor.

[1] It is suggested in behalf of the petitioner that his entry into the country June 27th, after a temporary absence, was not a new entry; but that point seems to be settled the other way. Lapina v. Williams, 232 U. S. 78, 34 S. Ct. 196, 58 L. Ed. 515; Guimond v. Howes (D. C.) 9 F.(2d) 412; Ex parte Rodriguez (D. C.) 15 F.(2d) 878.

[2] The petitioner calls attention to the fact that on or before March 30, 1926, while out on his original bond, he made a visit to Canada, and on that day was admitted at Calais.

The attitude of the immigration officials toward this incident is stated in a letter from Mr. Howes, the district director, to the Commissioner General of Immigration as follows:

"The alien has made several trips to Canada while out on bond, and as his attorney has referred to his legal admission on March 30, 1926, you are advised that the alien did visit Canada just prior to that date, returning through the port of Calais, Me., was questioned by an immigration officer, and permitted to re-enter because of the fact that he had not surrendered himself for deportation, and was still out on bond for deportation on or before May 19, 1926."

It is argued for the petitioner that, by permitting him to enter March 30th, the department was in some way estopped from proceeding against him again; that, finding him out of the country on March 30th, it should have kept him out, and thus accomplished its purpose. It does not lie in the mouth of the petitioner to make this claim, when the immigration officials were simply permitting him to enter and save the condition of his bond. They had a right to continue with the proceedings for deportation already instituted and then pending, in which the petitioner could be heard and make a defense and have his rights settled, as well as those of the government. He lost no rights and gained no rights by being allowed to enter the country at that time.

On June 4th, on the other hand, after another temporary absence, he was refused admission, and of this he complains, on the ground that it prevented him from obeying a possible order of the court in the habeas corpus proceedings then pending, and in complying with the conditions of his bail bond to appear in this court.

Possibly the court might have found it necessary to take action if it had found that its proceedings in the case had been interfered with; but Riley, acting independently and on his own initiative, took this matter in his own hands. He voluntarily departed from the country. He did not apply for admission after a temporary absence under such conditions as the Secretary of Labor might prescribe, as provided by law. He took the law into his own hands, evaded the officers, and entered surreptitiously and without inspection.

[3] Entering in this way is an offense, even if he had a right to enter. Sotorios Targakis v. U. S. (C. C. A.) 12 F.(2d) 498.

[4] It follows that the Department of Labor has proceeded legally and has evidence supporting the charges that Riley entered without inspection, and entered within one year from date of exclusion, consent to reapply for admission not having been granted. [5] That he had been convicted of a felony or other crime or misdemeanor involving moral turpitude prior to his entry rests on the conviction of conspiracy to violate the prohibition laws. Certainly, since prohibition has become a part of the Constitution, it cannot be said that conspiracy to violate the laws passed in accordance with its mandate involves no moral turpitude.

I do not think it necessary to consider the allegation that the petitioner is likely to become a public charge. Any such likelihood would grow out of his persistent violation of the criminal laws, rather than from his financial inability to support himself and family.

[6, 7] The petitioner makes his final and principal stand on the claim that he is not an alien. No evidence on this point was presented prior to this proceeding, and no such claim has ever been made to the immigration authorities. On this point the petitioner has had a full hearing in this court, and every opportunity to present evidence and argument.

The petitioner was born in Canada, and his earliest recollections of his family are that they were Canadians; but he avers that he has lately learned from a brother that his father was born in this country, moving to Canada when a young man.

We start with a very strong presumption, which must be overcome by Riley, that he is an alien. He was born and baptized in Canada, and for all his life of more than 50 years has acted, regarded himself, been regarded, and held himself out as a Canadian. His father, who lived and brought up his family in Canada, never mentioned to the petitioner or to anybody in his hearing that the father was other than a native-born Canadian, as he appeared to be. There is no record evidence, no writing of any kind, no real family tradition, that the father was born in this country. One or two brothers or sisters now testify that many years ago they heard their father say he was born in New York. There is testimony that at one time, while having a dispute with his boss in the shipyard in Calais, he claimed to have been born in this country.

On the whole, the evidence is not sufficiently convincing that the older Riley was born in this country; but, if actually born in this country, the evidence would seem to be more consistent with expatriation than otherwise. The petitioner claims citizenship through the alleged citizenship of his father; but this country expressly by law recognizes expatriation as a natural right of its people, and emphatically forbids any officer of

the government to question such right. Comp. St. § 3955, Rev. St. § 1999. If the Act of March 2, 1907, § 6 (Comp. St. § 3963), had been passed earlier, the petitioner would have been obliged to record at an American consulate his intention to claim American citizenship in order to receive protection of this government. This is an indication of the policy of the country.

"In order to forfeit one's citizenship, an actual or express renunciation is not necessary; mere absence for a prolonged period, without intention to return, may be sufficient. The general rule adopted by the State Department of the United States government, with reference to loss of citizenship by continuous residence abroad, is to the effect that a continuous residence abroad for three years, after the attainment of majority, produces a loss of citizenship, unless it is clearly proved that the animus revertendi existed." 11 Corpus Juris, p. 784.

It is not necessary to go to that whole extent in this case, however. I find that all the facts are quite consistent with an actual expatriation of the elder Riley, many years ago, and that the petitioner has utterly failed to lift the weight of presumption against him growing out of the whole situation covering the last 50 years. His claim to citizenship is too tenuous to support him. It follows that the Department of Labor had jurisdiction over the petitioner, and, as the proceedings are regular and the petitioner has had, not one, but many, fair hearings, I have no discretion in the matter but to dismiss the writ; and—

It is so ordered.