**PODOLSKI v. BAIRD, Sheriff, et al.**

No. 9884.

United States District Court
E. D. Michigan, S. D.

Nov. 6, 1950.

Isaac M. Smullin, Detroit, Mich., Englander & Englander, New York City, for petitioner.

Edward T. Kane, U. S. Atty., Joseph C. Murphy, Asst. U. S. Atty., Detroit, Mich., Harry Kobel, District Adjudications Officer, Immigration & Naturalization Service, Detroit, Mich., for respondent.

KOSCINSKI, District Judge.

### Findings of Fact

1. Petitioner, Henry Podolski, seeks by writ of habeas corpus to obtain his release from custody for the reason that he is being illegally deprived of his liberty without due process of law and without any warrant issued out of this court or any other court.

2. Respondents' answer and return to the petition alleges that petitioner was arrested and taken into custody pursuant to a warrant dated August 4, 1949, issued by James E. Riley, Acting Assistant Commissioner, Enforcement Division of the Immigration and Naturalization Service,

charging; that petitioner has been found in the United States in violation of the immigration laws thereof, and is subject to be taken into custody and deported pursuant to the Act of October 16, 1918, as amended, in that he was, prior to entry, a member of the following class, set forth in Section 1 of said Act, 8 U.S.C.A. § 137: An alien who is a member of an organization, association, society or group that writes, circulates, distributes, prints, publishes or displays, or causes to be written, circulated, distributed, printed, published, or displayed or has in his possession for the purpose of circulation, distribution, publication, issue, or display, any written or printed matter advising, advocating, or teaching the overthrow, by force or violence, of the government of the United States; and the Act of October 16, 1918, as amended, in that he was, prior to entry, a member of the following class, set forth in Section 1 of said Act: An alien who is a member of an organization, association, society or group that believes in, advises, advocates, or teaches the overthrow, by force or violence, of the government of the United States.

3. Petitioner was arrested on said warrant in 1949 and thereafter released on bail approved by the Attorney General in the amount of $5,000, pending determination of deportation proceedings now pending against him.

4. Hearings were had in such deportation proceedings from December 19, 1949, to February 20, 1950, but by stipulation between respondent, his attorneys, and the Immigration Service it was admitted that such hearings did not conform to the procedural requirements of the Administrative Procedure Act of June 11, 1946, 5 U.S.C.A. § 1001 et seq., and a hearing de novo was therefore set for November 3, 1950.

5. Petitioner was rearrested on October 23, 1950, on the warrant dated August 4, 1949, being the same warrant on which he was previously arrested and released on bail, and is now held in custody without bail by order of the Attorney General.

6. Petitioner first entered the United States in 1930; deportation proceedings were instituted against him on the basis of his illegal entry on a forged passport but such proceedings were cancelled and his entry legalized in 1944, as of September 4, 1937.

7. Petitioner left the United States, for a visit to Poland in December, 1945, and returned in January, 1946, having obtained the necessary documents for departure and re-entry.

8. Petitioner, by his own admission, was a member of the left-wing socialists, prior to his entry into the United States; he now subscribes to the principles of left-wing socialism and, after his arrival here, has taught others theories of economics based on left-wing socialist views. In answer to the question as to whether or not he is a Communist, he answered, on previous advice of his counsel, "I refuse to answer because of self-incrimination."

9. No showing has been made by respondents that since petitioner's release on bond in the deportation proceedings now pending against him, and up to the time of his rearrest on October 23, 1950, he violated any of the conditions of the bond given for his release, or that he has failed to appear before the immigration authorities at any time he was requested to do so.

10. No showing has been made that any obstacles exist to prevent the Immigration and Naturalization Service from proceeding toward an expeditious determination of petitioner's deportability in the proceedings now pending before that Service.

11. Petitioner admitted that he is reconciled to the fact that he must leave the country, with or without deportation. Two weeks prior to his last arrest he petitioned the Immigration and Naturalization Service, through his attorney, for opportunity to leave the country voluntarily and thus speed his departure.

12. Petitioner attacks the validity of the warrant on which he is being detained for the reason that such warrant "does not allege violation of any statute of the United States."

13. Both parties concede that this court has jurisdiction to determine the validity of the process on which petitioner is be-

ing detained; petitioner further contends that, if he was arrested on a valid process and was otherwise accorded due process up to the time of his rearrest, this court should then determine whether the Attorney General abused his discretion in denying bail to petitioner, while respondents claim such discretion is absolute and not reviewable by this court.

## Conclusions of Law
### Warrant

1. Petitioner argues that the Act of October 16, 1918, as amended Title 8 U.S.C.A. § 137, provides for *exclusion* of aliens who at any time shall be or *shall have been* members of any one of the classes therein enumerated, but for *deportation* of only those aliens who were at the time of *entry* or became within five years after entry members of such excludable classes, while the warrant charges petitioner with membership in one or more of the excludable classes *prior to entry* and that the warrant, therefore, "charges no violation of a statute" and is void.

2. The Act of October 16, 1918 provides that any alien who, at any time, shall be or *shall have been* a member of any one of the classes therein enumerated shall be *excluded* from admission into the United States. The classes are enumerated in subsections (a) to (e), inclusive.

3. The classes to which the warrant refers are covered by subsections (c), (d), and (e) of the Act.

4. Subsection (g) of the Act provides that any alien *who was at the time of entering* the United States, or has been at any time thereafter, a member of any one of the classes of aliens enumerated in that section, may be taken into custody and deported, in the manner as provided by various other sections of the Act, including Section 155, Title 8 U.S.C.A., Act of February, 5, 1917.

5. Section 155 provides: "(a) At any time *within five years after entry*, any alien who at the time of entry was a member of one or more of the classes excluded by law; any alien who shall have entered or who shall be found in the United States in violation of this chapter, or in violation of any other law of the United States * * * shall, upon the warrant of the Attorney General, be taken into custody and deported."

6. The language of the warrant which alleges membership in one or more of the excludable classes properly charges violation of Section 137 of Title 8 U.S.C.A., since the interpretation of such language charges petitioner with being an alien who has been found in the United States in violation of statutes of the United States, that is, in violation of the exclusion statute.

7. An excludable alien who has entered the United States is within an excluded class for the purposes of section providing for the deportation of an alien on Attorney General's warrant whenever he is found within five years after entry to be excludable pursuant to the same provisions of law which if they had been invoked before entry would have brought about his exclusion. United States ex rel. Vajta v. Watkins, 2 Cir., 179 F.2d 137.

8. A warrant for arrest of an alien for deportation need not have the formality and particularity of an indictment, but must contain sufficient information to enable the alien to offer testimony in refutation of the charge. United States ex rel. Bauder v. Uhl, 2 Cir., 211 F. 628. The warrant in petitioner's case sufficiently informs him of the nature of the charge made against him.

9. The fact that petitioner's prior entry into this country had been legalized is of no avail to him, since his entry in 1946 after departure for a visit to Poland is construed as a new entry, with right of exclusion on the same conditions as the original entry. Ex parte Rodriguez, D.C., 15 F.2d 878; Riley v. Howes, D.C., 17 F.2d 647; United States ex rel. Matterazza v. Fogarty, D.C., 13 F.Supp. 403.

10. Petitioner is being detained under a valid warrant of the Immigration and Naturalization Service.

### Bail

1. Section 20 of the Immigration Act of 1917, Title 8 U.S.C.A. § 156, provides

298

that pending the final disposition of the case of any alien taken into custody, he may be released under a bond in the penalty of not less than $500.

2. A conflict of authority existed as to the interpretation of this provision, the majority of jurisdictions holding that the granting or withholding of bail was within the discretion of the Attorney General, while others, including this circuit, Prentis v. Manoogian, 6 Cir., 16 F.2d 422, construed the provision as imposing a mandatory duty on the Attorney General to grant bail if offered by the alien and that the discretion was that of the alien and not the Attorney General.

3. No later decisions of the Sixth Circuit Court of Appeals can be found repudiating the prior interpretation of Section 20 of the Immigration Act, although such interpretation was not accepted by Judge Freed of the Ohio District Court, which is a part of this circuit. United States ex rel. Poppis v. Tomlinson, D.C., 45 F.Supp. 447.

4. Section 23 of the Subversive Activities Control Act of 1950, 8 U.S.C.A. § 156, which is amendatory of the Immigration Act of 1917, specifically grants discretion to the Attorney General to continue the alien in custody pending final determination of the deportability, to release him under bond in the amount of not less than $500 or to release him on conditional parole, thus resolving the conflict. Respondents rely on this Section of the 1950 Act and Section 20 of the Immigration Act of 1917 as authority for petitioner's present detention without bail.

5. Prior to enactment of the Subversive Activities Control Act, the Attorney General had no discretion, under the Immigration Act of 1917 as interpreted in this jurisdiction, to grant or withhold bail, but it was mandatory upon him to release an alien on bail.

6. After the enactment of the Subversive Activities Control Act of 1950, granting such discretion to him, the Attorney General assumed to exercise the discretion which, but for the interpretation of his authority under the Immigration Act of 1917, he could have exercised at the time

of petitioner's prior arrest on the same warrant, and elected the first of the three discretionary methods of dealing with an alien pending deportation proceedings, by taking this petitioner into custody, without bail.

7. The discretion conferred upon the Attorney General, either by the Immigration Act of 1917, or the Subversive Activities Control Act of 1950, to continue an alien in custody, to release him under bond, or to release him on conditional parole, in pending deportation proceedings, is a reviewable one.

8. The argument of respondents that the discretion of the Attorney General in such cases is tantamount to the power of a judge to suspend the execution of a sentence, or to the President's to pardon a convict, is not applicable to pending deportation proceedings. A judge exercises his power of dispensing justice and the President his right to pardon a prisoner only after the accused has been found guilty by due process of law. In the present case, petitioner's deportability has not been determined and the deportation proceedings are still pending against him. The case of United States ex rel. Kaloudis v. Shaughnessy, 2 Cir., 180 F.2d 489, is likewise inapplicable, since the alien in that case was attempting to have an order of deportation suspended after his deportability had been determined and his deportation ordered.

9. The developments which led to enactment of the Subversive Activities Control Act of 1950, including the grant of discretionary power to the Attorney General here discussed, preface the remaining provisions of the Act and reflect the purpose of the Act to be the protection of our national security against the cancerous evil of totalitarianism. The granting of absolute discretion to the Attorney General to deny bail to aliens pending deportation proceedings against them is repugnant to all principles which are the foundation of our democracy and would defeat the very purpose for which the legislation was enacted, by conferring omnipotent powers upon one individual to deprive of liberty persons entitled to due process of law and thereby adopting, rather than stemming, totalitarian

methods of government. Obviously, Congress was not motivated by such intent in enacting the Act.

10. The Attorney General's discretion to release an alien on bail pending final disposition of deportation proceedings must be reasonably exercised on consideration of such factors as the probability of the alien being found deportable, the seriousness of the charge against him if proved, the danger to public safety of his presence within the community, and alien's availability for subsequent proceedings if enlarged on bail. United States ex rel. Potash v. District Director of Immigration & Naturalization, 2 Cir., 169 F.2d 747. All factors should be considered; the existence of one or more should not motivate the Attorney General's exercise of discretion. Danger to public safety of petitioner's presence within this community and his unavailability for subsequent proceedings, if enlarged on bail, have not been shown. He responded in the past to every request for his appearance and there is reason to believe that he will continue doing so. Although his political beliefs are obnoxious and offensive to the ideology which bore the wholesome fruit of our democratic system of government, and by his own admission he has attempted to impress such beliefs on others, these factors, alone, had never been held sufficient to deprive an alien of his liberty until such time as the proper administrative body, by due process of law, determines that he is undesirable and deportable. In the habeas corpus proceedings now pending before this court it was not shown that such teachings, though extremely unfavorable to a free society, advocated violent overthrow of the government. Petitioner continued in such beliefs and practices with reference thereto throughout his long stay of twenty years in this country and the danger of his presence in this community would be no greater now than it was throughout those years. If the Attorney General is armed with damaging enough data against petitioner to warrant the drastic action of imprisoning him without bail now, this court was not given the benefit of such data during these hearings. At any rate, such data, if available, can be utilized in effecting petitioner's early deportation by an expeditious disposition of the deportation proceedings now pending.

11. Except in extreme cases, little can be gained by denial of bail pending deportation proceedings to rid this country of aliens who gain entry here, not for the purpose of embracing our own principles of government, but with the perverted belief that they can uproot them. Prompt disposition of such proceedings would have a more salutary effect.

12. Under the circumstances in this case, denial of bail to petitioner pending determination of his deportability amounts to an abuse of discretion by the Attorney General.

13. Pending such determination, petitioner may be released upon the furnishing of a bond in the same amount and on the same conditions as approved by the Attorney General on petitioner's release after the prior arrest on this same warrant.

14. An order in that effect is being entered simultaneously and in accordance with these findings of fact and conclusions of law.