UNITED STATES ex rel. MAVROKEFA-
LUS v. MURFF, District Director of Im-
migration and Naturalization Service,
et al.

UNITED STATES ex rel. BAFALUKOS v.
MURFF, District Director of Immigration
and Naturalization Service, et al.

Nos. 5202, 5203.

United States District Court
D. Maryland, Civil Division.

Nov. 28, 1950.

644

Maurice Braverman, Baltimore, Md., for petitioners.

Bernard J. Flynn, U. S. Atty., Baltimore, Md., for respondents.

CHESNUT, District Judge.

These two habeas corpus cases have been heard together and may be conveniently decided in one opinion. The petitions were filed November 10, 1950, and the writs made returnable on November 14th instead of November 13th for the convenience of counsel. The cases were heard and submitted on November 16th. The petitioners in both cases are alien Greek seamen and the respondent in each case is John L. Murff, District Director of Immigration and Naturalization. The petitioners are now in custody without administrative bail being allowed, under authority of the Attorney General of the United States acting under section 23 of the Internal Security Act of 1950 passed by Congress September 23, 1950 over Presidential veto. Section 23 is an amendment of Section 20 of the Immigration Act of February 5, 1917 as previously amended. 39 Stat. 890, 57 Stat. 553, 8 U.S.C.A. § 156. Section 20(a) of the Immigration Act of 1917 as thus recently amended by the Internal Security Act of 1950 provides, among other things: "Pending final determination of the deportability of any alien taken into custody * * * such alien may, in the discretion of the Attorney General (1) be continued in custody; or (2) be released under bond in the amount of not less than $500, with security approved by the Attorney General; or (3) be released on conditional parole." 8 U.S.C.A. § 156(a).

The related provisions in title 8 U.S.C.A. § 156, before the recent amendment of 1950, read as follows: "Pending the final disposal of the case of any alien so taken into custody, he may be released under a bond in the penalty of not less than $500 with security approved by the Attorney General, conditioned that such alien shall be produced when required for a hearing or hearings in regard to the charge upon which he has been taken into custody, and for deportation if he shall be found to be unlawfully within the United States."

Prior to 1950, and under the wording of title 8, § 156, there were judicial decisions to the effect that the exercise of discretion by the Attorney General with respect to admitting the alien in custody to release on bond, was reviewable by the courts; and also the purpose of requiring bond was merely to secure the attendance of the alien from time to time when required in accordance with the administrative proceedings with regard to deportation. It is to be noted that in the legislative history of the Act of 1950 the Congressional Committee stated that the language formerly found in section 20—"has often been found to be lacking in clarity and doubtful in purpose when questions have arisen concerning procedure following arrest of an alien, or during the interim between his arrest and his hearing and decision on his case, or during the time after he is ordered deported and the accomplishment or failure of such deportation. The Committee believes that this Bill will greatly simplify such details." See H.R. 1192, 81st Cong., Ist Sess. p. 5–6; S.R. 2239, 81st Cong., 2d Sess. p. 5.

The facts relating to these two cases will be found in the petitions and the returns and the testimony of the respondent Murff. The petitioners' traverse to the return is in effect merely a demurrer to the sufficiency of the return to justify the holding of the petitioners in custody without bail. At the hearing the petitioners submitted no oral evidence as their counsel thought it unnecessary, but the respondent, Murff, District Director of Immigration and Naturalization, was called as a witness subject to examination and cross-examination by counsel. The controlling facts in the case may, I think, be very shortly stated.

Both petitioners are alien Greek seamen who, for a number of years past, have been engaged in their vocation as seamen on foreign ships coming to American ports.

Upon their last entry they were permitted to land under a regulation providing that they should return with their ship not exceeding a period of 29 days. Neither petitioner did return when his ship sailed again from the port at which he had landed; and the original deportation proceedings were begun against one of the petitioners four months after he landed and against the other petitioner within 17 days.

The petitioner Bafalukos was first arrested in deportation proceedings four months after he last landed. He was first admitted to bail in the sum of $500 and subsequently re-arrested by administrative order because by reason of his activities the bail was considered inadequate. He applied to this court for release on habeas corpus and after hearing the writ was discharged. Subsequently he was again admitted to bail administratively in the amount of $2,000. This was before the passage of the 1950 Act. He has been subsequently re-arrested and is now held in custody, pending the final termination of deportation proceedings, and without bail.

The petitioner Mavrokefalus was first arrested in deportation proceedings on or about October 20, 1950, and is likewise held in custody without bail pending final decision in deportation proceedings.

In the case of Bafalukos the immediate cause for his arrest and detention, as set out in the respondent's answer, is that he received telegraphic instructions from the Acting Commissioner of Immigration and Naturalization acting under authority delegated to him by the Attorney General as follows: "By authority of the Attorney General delegated to me by Section 90.1 of Title 8 C.F.R. (12 F.R. 5072, July 31, 1947) under section 37 of the Alien Registration Act of 1940, 8 U.S.C. 458 [8 U.S.C.A. § 458], you are directed to detain Theodores Bafalukos under section 20 of the Immigration Act of 1917, as amended by the Internal Security Act of 1950, pending further instructions. The taking into custody automatically cancels the bond. Do not release under bond."

And in the respondent's return in the case of Mavrokefalus, the authority for the continued custody of the petitioner is based on section 20 of the Immigration Act of 1917, as amended by the Internal Security Act of 1950, and by reason of authority delegated to respondent by Chapter I of title 8, Code of Federal Regulations, Part 150.6(b) as amended March 6, 1950, which reads: "Detention without bond. If, in any case in which detention without bond has not been authorized, the officer in charge of an office having custody of an alien has reason to believe that release should not be authorized under any condition, such alien may be continued in custody but a report shall promptly be made to the Commissioner giving reasons for the action taken."

It appeared from the testimony of the respondent that the dominant consideration which motivated the administrative department in continuing the petitioners in custody without bond was their membership in or activities on behalf of a Greek maritime union known as the Omospondia Ellikon Najtergatikon Organoseon. (Federation of Greek Maritime Unions; known as the O. E. N. O.); and that this organization holds itself out as a labor union but follows the Communistic line and has been outlawed by the Greek Government as outright Communistic. On September 5, 1950 (15 Fed.Reg. 6307) the Attorney General of the United States, pursuant to executive order 9835 (12 Fed.Reg. 1939) designated the American Branch of the Federation of Greek Maritime Unions as Communistic and the name of this organization is contained in the Attorney General's list of October 23, 1950 of such Communistic organizations. The petitioner Mavrokefalus on inquiry admitted that he was a member of the Union, and on investigation the respondent learned that the petitioner Bafalukos was engaged in the activity of an organizer for the O. E. N. O.; and as such he was in charge of the books of account, membership books, cards, subscription lists and official seals of the organization.

As I understand it, the contention of counsel for the petitioners is not that they should be absolutely released from custody without condition but only that they should be released upon bail to be fixed either by the court or by the Attorney General.

Counsel stresses the hardship to petitioners of continued custody without bail, in that it is said their livelihood depends upon their ability to obtain employment as seamen and that if released on bail they could probably within two weeks or thirty days obtain such employment on some foreign ship whereby they could voluntarily depart from the United States without awaiting a final administrative order for deportation, if that should result. This seems plausible and at first blush reasonable in itself until we remember that the purpose of deportation proceedings is to obtain an order of deportation which, if granted, will warrant the subsequent exclusion of the alien from re-entry; and re-entry after such an order is itself an offense against the laws of the United States. In these two cases the United States Attorney urges that, in the view of the Attorney General, in the interest of the United States, these petitioners ought to be deported rather than given permission to leave the country voluntarily. I cannot say that this attitude of the Government is in itself arbitrary or unreasonable as it seems to be predicated on the official view of the Attorney General that the petitioners belong to an organization which he has found on official inquiry to be hostile to the interests and internal security of the Government. United States ex rel. Bartsch v. Watkins, 2 Cir., 175 F.2d 245, 247. It is made clear by the Act of Congress at the outset under the caption of "Necessity for Legislation" that there was real need, in the opinion of Congress under present well known world conditions, for more effective legislation to protect the internal security of the United States than theretofore existed. And this is particularly applicable to the amendment of section 20 of the Immigration Act of 1917.[1]

Despite this it is my opinion that the decision of the Attorney General is not absolutely binding to the extent that it precludes the judicial department of the United States from inquiring, in the exercise of its judicial power, whether the action of the Attorney General in the particular case is purely arbitrary and without any legal warrant at all. To this extent I think the administrative decision is still the subject of judicial review. U.S. ex rel. Potash v. District Director, 2 Cir., 169 F.2d 747. See also Moraitis v. Delany, D.C. Md., 46 F.Supp. 425, 432; modified on other grounds, 136 F.2d 129. But to warrant review by the courts, it must be made to appear that the action of the Attorney General is entirely devoid of any reasonable basis. In these cases I cannot say that, in view of the situation as it appeared to Congress, the amendment which authorizes the Attorney General to continue the holding of the alien without bail pending the deportation proceedings, is unconstitutional or his actions thereunder so lacking in due process that it should be vacated by the court. I do not find in these cases that the decision of the Attorney General was arbitrary and capricious. We must be careful in judicial review of administrative action not to merely substitute the opinion of the judicial department for that of the executive where the latter is acting within the

---

1. See particularly section 2 of the Act, 50 U.S.C.A. § 781, Necessity for Legislation. Paragraph (13) of section 2 reads as follows: "There are, under our present immigration laws, numerous aliens who have been found to be deportable, many of whom are in the subversive, criminal, or immoral classes who are free to roam the country at will without supervision or control." See also section 22 of the Act of 1950 which further amends the Act of October 16, 1918, as amended, 40 Stat. 1012, 41 Stat. 1008, 54 Stat. 673, 8 U.S.C.A. § 137—
"* * * the same is hereby, amended to read as follows:
" 'That any alien who is a member of any one of the following classes shall be excluded from admission into the United States: * * *
(2) Aliens who, at any time, shall be or shall have been members of any of the following classes: * * *
(C) Aliens who are members of or affiliated with * * *
(iv) the Communist or other totalitarian party of any State of the United States, of any foreign state, or of any political or geographical subdivision of any foreign state; * * *.' "
As appears from the evidence in these cases the petitioners were members of a Greek seamen's union said to be Communistic.

lawful bounds of the Constitution and within the scope of the authority delegated by Congress. The precise question here is whether, pending the reasonably expeditious determination of the deportation proceedings, it is proper for the Attorney General in the exercise of the broadened powers given him by the amendment, to conclude on a reasonable basis that the petitioners should remain in custody and not be admitted to bail.

In considering these cases it should be borne in mind that there is an entirely lawful proceeding now in progress with respect to deportation proceedings. In the case of both petitioners it is not disputed that when they were originally arrested they had violated the immigration laws of the United States by remaining in this country longer than permitted by their entry. One had over-stayed his leave for about four months and the other had failed to re-join his ship which sailed in about 7 days after his entry. One had engaged for quite a period of time at least, in activities other than those of a seaman, in that he had been actively participating in the organization of an association which the Attorney General as a result of official inquiry had determined to be subversive to the interests of the United States. If, as the facts indicate, the Attorney General officially reached the conclusion that such activities on the part of one of the petitioners and that admitted membership in such an association by the other, were inimical to the security of the United States, and therefore decided that their custody should be continued without bail until the conclusion of the deportation proceedings, I cannot say that this was entirely arbitrary or capricious action on his part.

It is well to bear in mind some points of law that have been heretofore well established in regard to deportation proceedings. The subject of the conditions on which aliens may be permitted to enter the United States and the causes for deportation of aliens and the procedure therein are administrative and not judicial matters. It is within the power of Congress to prescribe these conditions. The proceeding is in nature civil and not criminal. It is also administrative and not judicial. And in general the administrative decision is not subject to review where the exercise of the administrative power has not been arbitrary or capricious, and the alien has had a fair hearing consistent with our fundamental concept of due process. When these conditions exist the administrative decision is ordinarily final. Kessler v. Strecker, 307 U.S. 22, 34, 59 S.Ct. 694, 83 L.Ed. 1082. In the instant cases it is not denied by the petitioners that they were found in the United States contrary to its laws with respect to alien seamen and therefore they are subject to deportation. United States ex rel. Stapf v. Corsi, 287 U.S. 129, 53 S.Ct. 40, 77 L.Ed. 215; Fafalios v. Doak, 60 App.D.C. 215, 50 F.2d 640; Delany v. Moraitis, 4 Cir., 136 F.2d 129, 130. In attacking the exercise of discretion by the Attorney General to retain the petitioners in custody as wholly arbitrary, the petitioners had the very definite burden of proof to establish that fact. In United States ex rel. Potash v. Disrtict Director, 2 Cir., 169 F.2d 747, 751, in the opinion by Circuit Judge Augustus N. Hand, it was pointed out in this connection that the burden was on the alien to make "a clear and convincing showing that the decision against him was without a reasonable foundation". In the instant cases the petitioners have offered no affirmative proof to this effect. They rest their case on the contention that the facts appearing in the pleadings and the evidence of Mr. Murff were so wholly devoid of furnishing a reasonable basis for the administrative action under the 1950 Act that the latter must be classed as arbitrary and capricious. With this view I cannot agree for the reasons already indicated.

Counsel state that quite recently there have been a number of decisions of federal district courts dealing with the applicability and effect of the amendment of section 20(a) of the Immigration Act of 1917 by section 23 of the Internal Security Act of 1950. They have furnished me with office copies of opinions in several such habeas corpus cases. In Case No. 2640 in the Western District of Washington, N. Div.,

in the Matter of Ernesto A. Mangaoang, and in Case No. 2641 in the same court in the case of Boris Sasieff,[2] each involving a case on the facts very similar to the instant cases, District Judge Bowen dismissed the writs after making findings of fact and conclusions of law, holding that the facts did not justify judicial vacation of the opinion of the Attorney General that the petitioners should be held in custody without bail. And in a series of cases in the District Court for the Southern District of California. In the Matter of Carlson (Stevenson, Carlisle and Hyum, respectively), 94 F.Supp. 18, District Judge Ben Harrison (November 10, 1950) filed a well considered opinion in the cases involving somewhat similar facts to the instant cases, discharging the writs. Emphasis was placed on the point that the petitioners had failed in meeting the burden of proof imposed on them to establish that the action of the Attorney General was arbitrary and capricious. On the other hand, in Case No. 9884, Podolski v. Baird, 94 F.Supp. 294, Judge Koscinski, and in Case No. 9908, Panpandreou v. Butterfield,[3] (both Eastern Dist. of Michigan) Judge Lederle, and in the Southern District of New York in Civil No. 61-334, United States ex rel. Klig v. Shaughnessy, 94 F.Supp. 157, Judge Ryan, held that the aliens then held in custody by orders of the Attorney General without bail should be released on bail; but an examination of the available opinions shows that the facts were quite different from those in the instant cases here, particularly in that it seems that the petitioners in all or most of those cases were aliens who had been resident in this country for many years and had only recently been arrested in deportation proceedings; and in the latter New York case the facts did not show that they were classed as Communists by administrative action but at most were merely charged as "a security peril". Counsel also called to my attention that in two habeas corpus cases in this court in February 1949, Angelopoulos v. DelGuercio (No. 4347)[4] and Alexandratos v. DelGuercio (No. 43-

48) Judge Coleman held that Greek seamen belonging to the same union mentioned in the instant cases were for that reason properly refused permission to enter the country by Immigration Authorities and he accordingly dismissed their writs of habeas corpus. In both cases appeals were noted but subsequently dismissed.

I therefore conclude that the facts of these cases do not warrant me in disturbing the decision of the Attorney General to continue to hold the petitioners in custody pending the determination of the deportation proceedings. However, in reaching this conclusion I assume that the deportation proceedings will be conducted with all reasonable expedition. I understand that in the case of Bafalukos the proceeding has been nearly concluded and a final decision will probably be shortly reached. In the case of Mavrokefalus the proceeding is going forward with regularity and I assume will be conducted with all reasonable dispatch. The holding of the petitioners in these deportation proceedings in custody without bail is, of course, one that imposes possible hardship on them respectively; and if they continue to be held without bail for an unreasonable length of time due to unnecessary delay in the conduct of the deportation proceedings they are at liberty to renew their application for relief by habeas corpus proceedings. And as to Mavrokefalus, it should be added that he is presently held by the respondent pursuant to general instructions only, with report to be made to Washington for specific decision as to the particular case. Presumably this report has already been made and the decision of the Attorney General with respect thereto will, it is assumed, be promptly made. On the review of the case it is possible that the petitioner will be allowed to depart voluntarily without deportation, or if deportation is decided upon, he may be admitted to bail in an amount deemed adequate by the Attorney General pending the conclusion of the proceeding. If final decision with respect to this petitioner's case should be unreasonably de-

2. See 186 F.2d 191.

3. No opinion for publication.

4. No opinion for publication.

layed, which is not to be presumed, he is at liberty to petition again for the writ of habeas corpus.

For these reasons both writs must be discharged. Counsel may present the appropriate orders in due course.