UNITED STATES ex rel. UNITED STATES LINES v. WATKINS, District Director of Immigration, etc.

District Court, S. D. New York.
Aug. 7, 1948.

Kirlin, Campbell, Hickox & Keating, of New York City (Delbert M. Tibbetts, of New York City, of counsel), for relator.

John F. X. McGohey, of New York City (William J. Sexton and Alvin Lieberman, both of New York City, of counsel), for respondent.

RYAN, District Judge.

This matter comes on by writ of habeas corpus.

Relator, Nick Colovis, a Greek national, has been in the United States for about five years. However during this time he has been shipping out on American vessels to foreign ports as a seaman. On each return to the United States he was granted shore leave as a bona fide seaman as provided for by Section 120.21(e) of Title 8 of the Code of Federal Regulations. In 1945, he married an American citizen in Houston, Texas, and took up residence there.

Relator has, since 1943, been in possession of an unexpired Greek passport, and a pass, certificate of identification and seaman's papers all issued by the United States Coast Guard, as well as of a social security card.

On February 5, 1948, relator shipped as one of the crew of the SS. Thomas C. Power from Baltimore, Maryland, for a round trip foreign voyage. On April 8, 1948, upon return of the ship to Norfolk, Virginia, relator was ordered detained on board by an Immigration Inspector, to be deported as a mala fide alien seaman pursuant to Section 120.21 (e), supra. This section provides that after the required inspection the Immigration Inspector may order an alien seaman retained on board and deported.

The SS. Thomas C. Power was taken out of service for repairs and relator was transferred to Ellis Island and there has been detained since April 12, 1948.

Relator contends that he is a bona fide seaman—that he has the required shipping documents, has had long service aboard American vessels and has always, in the past, been granted shore leave as a bona fide seaman.

Respondent argues that relator is subject to deportation as a mala fide seaman. Its contention is based upon an examination of relator conducted by the Immigration Inspector, at the time of relator's return to the United States upon completion of his last trip. The Immigration Inspector set forth his findings as follows:

"Among other things that Colovis admitted was the fact that he had no legal entry to the United States, yet claimed that his home was in Houston, Texas where he had stayed ashore for long periods of time and that he was married in that city. Because of these admissions it was doubted that Colovis would maintain the bonafide status of a seaman who could be allowed shore leave only while his vessel was in port. * * *"

These findings are not disputed by relator in his affidavit of August 3, 1948, submitted on this writ.

Counsel for relator points out that permitting the Immigration Service to treat relator as a mala fide seaman on his return from a round trip voyage, which began from an American port and from which relator shipped with seaman identification papers issued by United States authorities, places upon the steamship company the liability of paying for relator's maintenance while detained at Ellis Island at the rate of $3 per day, and also saddles it with the cost of his deportation. The operators of the vessel state that they had no alternative but to accept relator, who was sent to them in the usual way by designation of the union when all his papers were in order and his record satisfactory. They further state that they have neither the opportunity nor the facilities to check on seamen so sent to determine whether, in fact, they are bona fide alien seamen.

Of course, we are not concerned here with anything but relator's rights and whether those rights granted by law have been accorded him. The responsibility of the steamship company for his maintenance and subsequent deportation is wholly immaterial; that liability, if it exists, must

be determined at another time. If by reason of existing law and conditions the steamship company has unreasonably thrust upon it this responsibility, neither the time nor the occasion is appropriate to attempt to grant it relief.

■ The Immigration Inspector's classification of relator as mala fide is conclusive. He is the sole judge and all that is required of him is that he act in a just and impartial manner. United States ex rel. Nunez v. The Navemar, D.C.,E.D.N.Y. 1941, 41 F.Supp. 846. The Inspector's report coupled with relator's affidavit shows beyond doubt that he acted neither arbitrarily nor capriciously.

■ The one question presented here is whether an alien who has been residing in the United States illegally and who has shipped under American documents, on an American vessel, from an American port, for a voyage ending in an American port, is to be treated in the same manner as an alien seaman shipping in a foreign port and arriving at an American port for the first time.

In United States ex rel. Stapf v. Corsi, 1932, 287 U.S. 129, 53 S.Ct. 40, 77 L.Ed. 215, this question was answered in the affirmative. There, the alien seaman declared to be mala fide was ordered deported, despite the fact that prior to his shipping on a round trip voyage he had established such a residence in the United States that under the law as it then provided (Sec. 32 of the Act of 1917, c. 29, 39 Stat. 874, 895) he could not have been deported had he remained in the United States instead of shipping out. The Court, affirming a holding that by shipping out the alien seaman had lost his immunity from deportation and that his entry after the voyage was considered a first entry, said at page 132 of 287 U.S. at page 41 of 53 S.Ct.:

"The question is whether by so doing he made a new entry into the United States which left him amenable to the provisions of the act of 1924. * * * The relator's arrival in the United States in April, 1929, was an entry into this country notwithstanding he was a member of the crew of an American ship which had made a round trip voyage. He came from a place outside the United States, and from a foreign port or place, within the meaning of the immigration laws. United States ex rel. Claussen v. Day, 279 U.S. 398, 49 S.Ct. 354, 73 L.Ed. 758."

Relator, in spite of his five-year illegal residence in this country, finds himself in no better position than an alien seaman who shipping from a foreign port arrives here for the first time.

■ Alien seaman detained by the Commissioner of Immigration are not entitled to the rights of hearing and appeal accorded immigrants.

"The act of 1917 does not give a seaman the right to a hearing before a board of special inquiry, nor to an appeal to the Secretary of Labor. * * * they are only meant for immigrants seeking general admission to the United States. The interest here involved concerns no more than the seaman's temporary entrance in search of another berth * * *. It is a much less vital matter than an unrestricted entry, which generally presupposes a change of domicile, and the hope of a change in allegiance. What Congress thought necessary protection in the one case was presumptively not meant to apply to the other. At least there is no intimation of it." L. Hand in United States ex rel. D'Istria v. Day, 2 Cir., 1927, 20 F.2d 302, 303.

In Lloyd Royal Belge Societe Anonyme v. Elting, 2 Cir., 1932, 61 F.2d 745 at page 746, the court when considering the respective rights of immigrants and alien seamen, wrote:

" * * * it would appear that, if an alien seaman is ordered to be detained and is to be accorded the rights of the alien who seeks admission as an immigrant, the vessel on which the seaman is employed would be unable to leave port before the appeal could be heard. Therefore it seems that Congress intended a more expeditious determination of a seaman's case."

And, in West Indian Company Co., v. Root, 3 Cir., 1945, 151 F.2d 493, 497, it was said:

"It should be pointed out that the privilege of an alien seaman to land is deter-

mined in the first instance by the Immigration Inspector who examines the crew. Lloyd Royal Belge Societe Anonyme v. Elting, supra; * * *. Manifestly, the object of Congress in passing the legislation pertaining to alien seamen was to eliminate to the greatest degree the possibilities of aliens entering the United States in the guise of seamen."

The relator was duly adjudged to be a mala fide alien seaman; the order for his detention aboard the vessel on which he arrived and for his subsequent deportation was properly made; he is now lawfully detained. Writ dismissed.