UNITED STATES ex rel. KENG HO CHANG v. SHAUGHNESSY, District Director, New York District Immigration & Naturalization Service.

United States District Court
S. D. New York.
May 12, 1952.

Arthur S. Schapira, New York City, for relator.

Myles J. Lane, U. S. Atty. for the Southern District of New York, New York City, (William J. Sexton, Asst, U. S. Atty., Lester Friedman, Attorney, Immigration & Naturalization Service, New York City, of counsel), for respondent.

IRVING R. KAUFMAN, District Judge.

The relator seeks to sustain a writ of habeas corpus.

The relator is a 28 year old Chinese citizen who first entered this country at the port of Baltimore, Maryland, on October 12, 1947 as a seaman aboard the S. S. "Negara". He apparently entered and has remained here illegally since then except for three continuous voyages he made between August 28, 1951 and March 3, 1952 aboard the S. S. "Roger Griswold". He shipped on those voyages as a seaman in possession of American seaman's papers.

The relator alleges that "on or about August 1951" he filed an application with the Commissioner of Immigration and Naturalization in Washington, D. C. for adjustment of his immigration status pursuant to the provisions of Section 4 of the Displaced Persons Act, 50 U.S.C.A.Appendix, § 1953. He avers that in his application he claimed displacement from China and fear that his return to that country would result in

physical persecution due to his opposition to Communism.

On December 28, 1951 the District Director of the Immigration and Naturalization Service at New York directed him to prepare the necessary documents for submission to establish his eligibility for adjustment of his status, and to await a notice of hearing on the application. It appears that no hearing has as yet been held.

On August 28, 1951, he signed on the S. S. "Roger Griswold" as a seaman and sailed from the port of Norfolk, Virginia. Thereafter he made the three aforementioned voyages.

On March 1st or 3rd, 1952, the relator landed at the port of Baltimore on a return voyage of the S. S. "Roger Griswold" from Spanish Morocco. At that time he applied for admission to the United States as a seaman on shore leave. The government alleges he was examined by an Immigrant Inspector to whom he stated that he had previously come to the United States in 1947 as a seaman. At the time the relator apparently could not document the statement, and, the government claims, he had previously told the ship's purser that he had been to sea for only six months. The government also claims that he was evasive during the examination.

The Inspector did not believe he would reship were he permitted to come ashore, and he was ordered detained on board and deported as a mala fide seaman pursuant to the provisions of 8 U.S.C.A. § 167; 8 C.F.R. 120.2, 120.21(e) and 120.35. On the two immediately previous occasions on which the relator had entered the United States, he had been admitted as a bona fide seaman.

The S. S. "Roger Griswold" was not scheduled to leave the United States and at the expense of the shipping company the relator was removed to Ellis Island on March 18, 1952 pursuant to 8 C.F.R. 120.36.

The relator's prime contention is that his detention, in the absence of a full and fair examination by the Immigrant Inspector and in view of the evidence of his recent previous reshippings, is an abuse of discretion by the Immigrant Inspector. That is the only genuine issue before me.

In his brief, the relator's attorney stresses his client's difficulty with the English language, and he urges that since the Immigrant Inspector examined the relator without an interpreter, "it is inconceivable that the Inspector and the Relator were in a position to understand each other." The attorney says that at the time of the examination the relator had in his possession his previous discharges from the S. S. "Roger Griswold" which, he suggests, is conclusive evidence that the relator had been pursuing his vocation as a seaman since August 28, 1951 and had thereafter reshipped with the vessel to which he was attached.

U. S. ex rel. U. S. Lines on Behalf of Coloyis v. Watkins, 2 Cir., 1948, 170 F.2d 998 is very much in point. It held that where a seaman's recent shore leaves show adherence to the time limit set by law, an Immigrant Inspector is acting capriciously and arbitrarily in ordering him detained for deportation as a mala fide seaman. In that case, the Court of Appeals for this circuit had before it the Inspector's original notice to detain on board and his more informal and detailed report made to his superior some three and a half months later. I have no such evidence before me. All that is presented is the fact that the relator was excluded, with no evidence of the reasons for the exclusion save that in the return to the writ, the government states "the relator was unable to present any of his discharge records to verify the continuity of his service. * * * When questioned further the relator was evasive in his responses. The Immigrant Inspector, in the exercise of his judgment, did not believe the relator would reship if permitted to land * * *." Yet, the relator urges that he did and does have valid discharge papers which he offered in court, and the government does not deny this even though admitting the papers were not examined by the Inspector. One wonders if the relator's "evasiveness" might not in good part have been made up of simple confusion and ignorance. Over and above that, is the striking and uncontradicted fact

that the government has apparently remained utterly inert about examining relator's discharge papers.

█ The test of a seaman's fides, in a matter such as this is his intent to reship, and the intent is his present intent. This is a question of fact. As to this, I find no basis whatsoever for the boarding Inspector's behavior. It was arbitrary.

█ I believe that relator's apparently illegal entry and residence in this country have little weight in determining his present intent to reship or not to reship. Even if the illegality is true, it nonetheless evaporates as evidence of mala fides in view of its remoteness in time and particularly in view of relator's present intent as evidenced by his conduct between August, 1951 and March, 1952. Again I turn to the Colovis case to fortify this conclusion. Relator there admitted, as indicated in the opinion below, D.C.S.D.N.Y. 1948, 79 F. Supp. 101, that he had no legal entry to the United States. Nonetheless the Court of Appeals sustained the writ. The language of the Colovis case, supra, is strikingly applicable. The key there as here was:

"[the relator's] custom to violate or not to violate like leaves previously granted. And there appears to be no reason why his previous voyages and interspersed leaves could not have been easily verified—as by the Coast Guard certificates of discharge—in the several days while [relator] was held in Norfolk [Baltimore in the instant case] or in the several months [several weeks in this case] while he was confined at Ellis Island." [170 F.2d 1000.]

On page 2 of its return to the writ, the government cites a group of cases which upon factual analysis are so irrelevant to the narrow issue here, that I can only take this as an inverted admission of the untenability of its position. The tenet urged upon the court is that those cases hold that even though relator may have previously entered the United States for shore leave, that did not in any way give him new or additional rights. But there is no dispute about the principle. Then follow the ten cases. Seven of them denied aliens' writs simply and solely on the ground that deportability rested on various kinds of crime or gross fraud which prevented entry or re-entry into this country. U. S. ex rel. Claussen v. Day, 1929, 279 U.S. 398, 49 S.Ct. 354, 73 L.Ed. 758; Lewis v. Frick, 1914, 233 U.S. 291, 34 S.Ct. 488, 58 L.Ed. 967; Lapina v. Williams, 1913, 232 U.S. 78, 34 S.Ct. 196, 58 L.Ed. 515; U. S. ex rel. Volpe v. Smith, 1933, 289 U.S. 422, 53 S. Ct. 665, 77 L.Ed. 1298; Bendel v. Nagle, 9 Cir., 1927, 17 F.2d 719, 57 A.L.R. 1129; U. S. ex rel. Lamp v. Corsi, 2 Cir., 1932, 61 F.2d 964; U. S. ex rel. Siegel v. Reimer, D.C., 23 F.Supp. 643, affirmed U. S. ex rel. Fisk v. Reimer, 2 Cir., 1938, 97 F.2d 1020.

The remaining cases cited by the government in support of the proposition are: U. S. ex rel. Stapf v. Corsi, 1932, 287 U.S. 129, 53 S.Ct. 40, 77 L.Ed. 215, which I do not read as requiring the writ be denied on the facts before me; and U. S. ex rel. Roovers v. Kessler, 5 Cir., 1937, 90 F.2d 327 and McCandless v. U. S. ex rel. Pantoja, 3 Cir., 1930, 44 F.2d 786, the particular facts of which clearly explain their essential distinction from the instant case.

Relator urges that he is eligible for adjustment of his status under Section 4 of the Displaced Persons Act of 1948, supra. The only reason the contention has come in to play in the instant proceeding is because relator urges that *if for no other reason* he should be allowed to enter to prosecute his displaced person application, while the government argues that since relator is an excluded alien who has been denied the privilege of shore leave, he is not residing in the United States and is, therefore, ineligible to adjust his immigration status as an alleged displaced person. By sustaining the writ, this ruling quiets each of those arguments insofar as this proceeding is concerned.

The writ is sustained. Settle order.